**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| JANE DOE | : | | |
| Plaintiff | : | CIVIL ACTION | : |
| v. | : | | |
| | : | No. 2:23-CV-04059 | |
| LOUIS P. BUCKY, P.C., LOUIS P. BUCKY, | : | | |
| (individually) and BUCKY BODY CENTER | : | | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND**
**TO DISALLOW THE PLAINTIFF TO PROCEED PSEUDONONIMOUSLY**

Defendants Louis P. Bucky, M.D. P.C. (improperly stated in the Caption as Louis P.

Bucky P.C. (the "Company"), Louis P. Bucky, individually (" Dr. Bucky") and the Bucky Body

Center (the "Center") (collectively the "Defendants"), by their undersigned counsel, hereby

respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff's

Complaint and to Disallow the Plaintiff to proceed pseudonymously pursuant to Rules 10 and

12(b)(6) of the Federal Rules of Civil Procedure and the holdings of the Courts in the Third

Circuit Court of Appeals.

**INTRODUCTION**

In a Complaint that includes claims that are clearly not available to her under well-settled

and long-established principles of federal, state and municipal law, Plaintiff (improperly

designated pseudonymously as JANE DOE) ("Plaintiff") makes claims against Defendants that

are not plausible on their face or are strictly prohibited by the terms of the statutes and

ordinances upon which she relies.  As the following discussion of her claims against Defendants

(and the lack of legal support for those claims) reveals, Plaintiff's claims for sexual harassment

and retaliation brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et*

1

*seq.* ("Title VII") and the Philadelphia Fair Practices Ordinance, 9 Phila. Code §1101 *et seq.* ("PFPO"), her claims pursuant to the common law of the Commonwealth of Pennsylvania, and her frivolous claims pursuant to state and federal sex trafficking laws must be dismissed against each of the Defendants.

By way of background, Bucky P.C. is a medical practice providing facial and body reconstruction, rejuvenation and repair through both invasive and non-invasive procedures at offices in Philadelphia and Montgomery County Pennsylvania. Led by Dr. Bucky, Bucky P.C. provides surgical solutions to patients at the Pennsylvania Hospital and the University of Pennsylvania Tuttleman Surgery Center in Philadelphia, PA as well as, from time to time, at other surgical facilities including the Vincera Surgical Center which is also in Philadelphia. Dr. Bucky also practices other non-surgical approaches to wellness and body sculpting at the Bucky Body Center utilizing both employees and independent contractors.

At all times applicable to the present allegation and continuing to the present, Laura DiPlacido ("DiPlacido") was a fulltime, well compensated employee of non-party Penn Medicine at the Penn Medicine Tuttleman Surgical Center located at 1840 South Street, Philadelphia, Pennsylvania.  As a surgical technologist employed by Penn Medicine and working in accordance with the Pennsylvania Surgical Technologist Regulation (attached hereto as Exhibit "A"), DiPlacido was responsible for preparing an operating room with sterile instruments, equipment and supplies and aiding the registered surgical nurse employed by Penn Medicine in the count of sponges, needles, supplies and instruments at the conclusion of any surgical procedure. At all times applicable to her claims and continuing at the present time, Plaintiff was paid for her services by her employer, Penn Medicine.

Prior to the events that are alleged to give rise to Ms. DiPlacido's claims, Plaintiff and Dr. Bucky worked at the same Tuttleman Surgical Center in the capacities described above where Ms. DiPlacido, who was employed and paid by Penn Medicine (and reporting to its surgical nurse a fulltime employee paid by Penn Medicine), assisted in operative procedures involving Dr. Bucky.   In November 2020, Plaintiff began working as an independent contractor for Bucky P.C. assisting sporadically in the context of operative procedures at the Vincera Surgical Center and assisting at the Bucky Body Center when her fulltime employment permitted. When Plaintiff was first hired by Bucky P.C. she completed and signed a Form 1099-Misc Withholding Exemption Certificate certifying that "**personal income tax is not required to be withheld on the payment of employee compensation…**" *See* Form REV-1832, attached hereto as Exhibit "B".

As a result of her status as an independent contractor, Plaintiff was paid by Bucky P.C. without tax withholding through her last day of work for Bucky P.C. on September 21, 2021, with negligible earnings in amounts totaling $1925.00 in 2020 and $7210.00 in 2021, depending on the work performed at the Vincera Surgical Center at $20 per hour or at the Bucky Body Center at $50 per hour. She worked as an independent contractor at both facilities for a total of 65 hours over that 10-month period.  *See* Paycheck statements issued by Bucky P.C. to Plaintiff for her intermittent, as needed part-time services, attached hereto as Exhibit "C".

In her filed Complaint,  Plaintiff cites events that she alleges give rise to liability under the cited statutes and ordinance, including the following:

- While working at the two Bucky entities as an independent contractor, Ms. DiPlacido, Dr. Bucky and others who worked at the Bucky entities attended a plastic surgery

3

conference in Florida (from April 29, 2021-May 2, 2021) where Dr. Bucky is alleged to have "pressed his lips" on those of Ms. Placido

- After the conference, Dr. Bucky is alleged to have sent (undated) notes to Plaintiff that expressed affection but did not in any way suggest her sporadic work for the Bucky entities were in jeopardy if she did not respond in kind (i.e. no *quid pro quo* ever suggested).

- On June 29, 2021, during a chance meeting in a restaurant in Philadelphia, Dr. Bucky is alleged to have "dragged" Plaintiff into a bathroom stall, pinning her against a wall and kissing her. The apparent incredulity to Ms. DiPlacido's allegation in regard to that alleged incident is that she continued to work with Dr. Bucky's entities after this allegedly disturbing incident another two days in August 2021 and another day in September (as reflected in Exhibit C)  before quitting all work with any Bucky entity on September 21, 2021;

- After she stopped working for the Bucky entities, she avers that she was the target of further improper actions by Dr. Bucky whose entities were no longer employing her as an independent contractor, i.e. on October 6, 2021, she received a long letter in which Dr. Bucky related their mutual love (paragraph 48 of the EEOC.

## STATEMENT OF THE CASE

### A.    Procedural History

The initiating Complaint in this matter (a copy of which is attached hereto as Exhibit "A") was filed in the United States District Court for the Eastern District of Pennsylvania on October 19, 2023 against the Defendants, individually and collectively by Plaintiff (improperly

designated pseudonymously as JANE DOE), a parttime independent contractor who worked only for the Company.

**B.** **Statement of Material Facts**

Defendants dispute each of the stated averments and the import of those allegations about them as they are set forth in the Complaint and reserve the right to further dispute Plaintiff's allegations in all future pleadings. However, for purposes of this Motion, it is respectfully suggested that the Court may only consider those facts set forth in the Complaint that are material, relevant and not disputed by the undisputable facts set forth in the documents attached hereto that are permitted to be considered since they directly arise from and relate to facts that have been averred in the body of the Complaint. Those facts are as follows:

- Plaintiff is an adult female who resides in the Commonwealth of Pennsylvania. Complaint ("Cmpl."), Paragraph("¶") 1.

- The Defendant Company is a company organized under the laws of Pennsylvania and doing business within the City of Philadelphia. Cmpl. ¶ 3.

- Dr. Bucky is an adult male who conducts services at, *inter alia,* 230 W. Washington Square and 1915 Sansom Street, Philadelphia, PA, 200 West Montgomery Avenue, Ardmore, PA and 1800 Rittenhouse Square, Philadelphia, PA.  He is a board-certified physician specializing in plastic  and reconstructive surgery and related procedures. He is the sole shareholder of the Company. Cmpl. ¶¶ 4, 5, 7, and 50.

- Dr. Bucky earned his medical degree from Harvard University Medical School in 1986, (Cmpl. ¶ 31), was then resident in general and plastic surgery at the Massachusetts General Hospital in Boston (Cmpl. ¶ 32), completed a fellowship in reconstructive surgery at Memorail Sloan Ketttering Medical Center in New York and completed a

fellowship in craniofacial surgery at Miami Childrens Hospital (Cmpl. ¶ 33). He is a

clinical professor of surgery at the University of Pennsylvania School of Medicine and

Chief of Plastic Surgery at Pennsylvania Hospital (Cmpl. ¶ 34) and left the employ of

Penn Medicine where he practiced from 1995 through 2007 to form his own practice

Defendant Louis P. Bucky M.D., P.C. (Cmpl. ¶ 35, 36).

- Contrary to the unsupported allegation in the Complaint, the Center is a wholly business

  operation owned by the Corporation that does perform services at 230 West Washington

  Square, and 1915 Sansom Street. Compl. ¶ 6.

- Contrary to the allegations throughout the Complaint, Plaintiff was not an employee of

  any of the Defendants but only worked as a parttime independent contractor for a total of

  65 hour over a period of approximately nine (9) months as conclusively demonstrated in

  the following documents relating to, arising from and directly refuting the allegations of

  employee/employer relationships with the Defendants:

  1. The 1099-Misc. Withholding Exemption Certificate for the year
     mandated by the Pennsylvania government regarding payments to
     independent contract workers relating to the non-withholding of income
     paid as wages signed by Plaintiff at the inception of her work with the
     Company on November 18, 2020. *See* Exhibit B.

  2. The check payment records of the Company for Plaintiff demonstrating
     she was paid as a "contractor" over a period of approximately nine
     months and earned less than $10,000 over that period for sporadic,
     parttime work ending voluntarily on September 22, 2021. *See* Exhibit C.

- Dr. Bucky invited and paid the expenses for Plaintiff and several other workers of the

  Company staff to attend a plastic surgery conference in Miami, Florida from April 29,

  2021 through May 2, 2021 (Cmpl. ¶ 62) and allegedly subjected Plaintiff to kiss on the

  lips during the conference (Cmpl. ¶ 74).

- During the time of Plaintiff's employment and then on October 6, 2021 after she quit, Dr. Bucky wrote notes to plaintiff the content of which are incorporated into Plaintiff's Complaint (Cmpl. ¶¶ 91, 93, 101, 102, 129, 130, 131, 132).

- Plaintiff continued to work for the Company through September 21, 2021 (Cmpl. ¶ 109) and Exhibit C.

- On or about June 29, 2021, Dr. Bucky restrained Plaintiff in a bathroom stall and subjected her to an undefined "physical force of a sexual nature"

- During a staff meeting of workers for the Company held at the Barclay Prime restaurant "cornered her near the restrooms (Cmpl. ¶¶ 186, 191).

- After Plaintiff left the Company, Dr. Bucky advised Plaintiff full time employer Penn Medicine, and specifically the Nurse Manager to whom Plaintiff reported that he did not want to work with Plaintiff during surgeries he conducted at the hospital facility (Cmpl. ¶ 194).

- There are no allegations in the Complaint that Plaintiff actually reported any harassment by Dr. Bucky to anyone in the workplace.

## DISCUSSION

### A,     Applicable Standards Controlling Motions To Dismiss

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a), which requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief "in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(*quoting Twombly*, 550 U.S. at 570).   In short, Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (*citing Bell Atlantic Corporation. v. Twombly*, 550 U.S. 544, 555 (2007)).

When reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must view all of the well-pleaded factual allegations in the complaint in the light most favorable to the plaintiff and accept them as true.  The Court must further grant the plaintiff the benefit of all reasonable inferences that can be derived from those well-pled allegations and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (1993). However, the court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. *Ashcroft*, 556 U.S. at 678; *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir, 2017) (*quoting Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (the court is "not compelled to accept unsupported conclusions and unwarranted inference, or a legal conclusion couched as a factual allegation")). *See also Reuben v. U.S. Airways, Inc.,* 500 Fed. App'x 103, 104 (3d Cir.2012)(*quoting Iqbal,* 556 U.S. at 678).  The Court can also consider undisputable documentation arising from and relating to the allegations in the Complaint.

In *Bell Atlantic Corporation v. Twombly*, *supra*, the Supreme Court clarified the 12(b)(6) standard and specifically directed  that the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Accordingly, "over the past several years, 'pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more

than a possibility of relief to survive a motion to dismiss.'" *Santiago v. Brooks Range Contract Services, Inc.*, Civ. A. No. 11-7269, 2012 WL 1019060, at *2 (E.D. Pa. March 26, 2012) (*quoting Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Edinboro Coll. Park Apartments v. Edinboro Univ. Found.*, 850 F.3d 567, 572 (3d Cir. 2017 (*quoting In re Vehicle Carrier Serv. Antitrust Litig.*, 846 F.3d 71, 79 n.4 (3d Cir. 2017); *Iqbal*, 556 U.S. at 679. *See also Ray v. Federal Ins. Co.*, 340 Fed. Appx. 105, 107 (3d Cir. 2009) (same)(*citing Iqbal*, *supra*).

This determination will "…be a content-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, at 663-664. As the Third Circuit has recognized, the "plausibility standard" requires "more than a sheer possibility" that a defendant is liable for the alleged misconduct. A claim satisfies the plausibility standard only when the facts alleged allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678; *Maiden Creek Assoc., L.P. v. U.S. Dep't of Transp.*, 823 F.3d 184, 189 (3d Cir. 2016); *Reuben*, 500 Fed. App'x at 104. Rather, the complaint must show the plaintiff's entitlement to relief with its facts. *Steedley v. McBride*, 446 Fed. App'x 424, 425 (3d Cir.2011) (*citing Fowler*, 578 F.3d at 211(3d Cir. 2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555). *See also Hellmann v. Kercher*, Civ. A. No. 07-1373, 2008 WL 1969311 at *3 (W.D. Pa. May 5, 2008)(finding that even under the lower notice pleading standards, the plaintiff must do more than recite the elements of a cause of action, and then make a blanket assertion of entitlement to relief).

While the plausibility standard is not "akin to a 'probability requirement,' " there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (*quoting Twombly*, 550 U.S. at 557).

The Third Circuit Court of Appeals requires the trial court to apply a three-step analysis under a 12(b)(6) motion: (1) it must initially "'tak[e] note of the elements a plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (*quoting Iqbal*, 556 U.S. at 675, 679).   Presently, because the allegations in Plaintiff's Complaint fail to satisfy the prongs mandated by the Court of Appeals for the Third Circuit, it is respectfully submitted that Plaintiff's claims must be dismissed.

**B.      The Causes Of Action For Discrimination Allegedly Creating A Hostile Work Environment, Disparate Treatment And Retaliation Against Louis P. Bucky P.C.  Under Title VII And The PFPO Must Be Dismissed Since Plaintiff Was Not An Employee Of The Company And The Complaint Does Not Set Forth That Plaintiff Complained To The Company About Discrimination**

Title VII and the Philadelphia Ordinance both forbid an employer from discriminating against any individual with respect to his or her compensation, terms, conditions, or privileges of employment because of such individual's sex. 42 U.S.C. §2000e-2(a)(1); 43 P.S. §955. The applicable burdens of proof on Plaintiff's Title VII claim apply equally to her claims under the PHRA.  *See Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir. 1996)(the PHRA is interpreted

10

consistently with its federal counterparts).  Accordingly, Defendant will treat Plaintiff's PHRA

claims coextensively with her claims under Title VII.

It is also well-settled that Plaintiff bears the burden of proving intentional discrimination

by a preponderance of the evidence. *Sarullo v. U.S. Postal Service*, 352 F.3d 789, 797 (3d Cir.

2003).  At the inceptional  stages of the litigation before a jury trial is reached, the analytical

structure for evaluating an employment discrimination claim (including those averring a hostile

work environment) has generally been held to be governed by the traditional burden-shifting

framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S.

792 (1973), subsequently refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248

(1981), and clarified in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).  Under this

framework, the basic allocation of burdens and order of proof is as follows:

> First, the plaintiff has the burden of proving by a preponderance of the
> evidence a *prima facie* case of discrimination.  Second, if the plaintiff
> succeeds in proving the prima facie case, the burden shifts to the
> defendant "to articulate some legitimate, nondiscriminatory reason for the
> employee's rejection."  Third, should the defendant carry this burden, the
> plaintiff must then have an opportunity to prove by a preponderance of the
> evidence that the legitimate reasons offered by the defendant were not its
> true reasons, but were a pretext for discrimination.

*Burdine*, 450 U.S. at 252-53 (citations omitted). "The ultimate burden of persuading the trier of

fact that the defendant intentionally discriminated against the plaintiff remains at all times with

the plaintiff." *Hicks*, 509 U.S. at 507.

Additionally, harassment of an employee based on gender is only sufficient to establish a

violation of Title VII if the harassment was so severe or pervasive that it created a hostile or

abusive work environment. *Harris v Forklift Sys., Inc.*, 510 U.S. 17 (1993); *Jensen v. Potter*,

435 F.3d 444 (3d Cir. Pa. 2006). In that regard, the Supreme Court has interpreted Title VII as

affording "employees the right to work in an environment free from discriminatory intimidation,

ridicule and insult." *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65 (1986). Many suffer severe

harassment at work, but if the reason for that harassment is one that is not prescribed by Title

VII, it follows that Title VII provides no relief.

In *Harris*, the Supreme Court clarified the elements of a discrimination claim resulting

from a hostile work environment. To fall within the purview of Title VII, the conduct in

question must be severe and pervasive enough to create an objectively hostile or abusive work

environment--an environment that a reasonable person would find hostile--and an environment

the victim-employee subjectively perceives as abusive or hostile. In determining whether an

environment is hostile or abusive, the courts are required to look at numerous factors, including

the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance. *Harris,* 510 U.S. at 23. To be actionable, "...the harassing

behavior must be 'sufficiently severe or pervasive to alter the conditions of [plaintiff's]

employment." *Page v. City of Pittsburgh,* 114 Fed. Appx. 52, 54; 2004 WL 2504365 *1 (3d Cir.

Nov. 8, 2004)(*quoting Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004)). *See also*

*Selvato v. SEPTA*, 143 F. Supp.3d 257, 266 (E.D. Pa. 2015), *aff'd*, 658 Fed. Appx. 52 (3d Cir.

2016)(the protection of Title VII does not cover all workplace difficulties).

To establish a *prima facie* case of hostile work environment based upon discrimination,

Plaintiff must prove that 1) she suffered intentional discrimination because of her protected class

(*i.e.* gender); 2) the discrimination was severe or pervasive; 3) the discrimination detrimentally

affected the employee; 4) the discrimination would detrimentally affect a reasonable person of

the same sex in that position; and 5) the existence of *respondeat superior* liability. *Andrews,* 895

at 1482; *Andreoli v. Gates*, 482 F.3d 641, 643 (3d Cir. 2007). It is well settled that a single

incident of harassment will not create a hostile work environment. *Bishop v. Amtrak,* 66 F. Supp.2d 650, 663 (E.D. Pa. 1999)(*citing Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 482 (3d Cir. 1997)). In addition, the acts giving rise to the claim of hostile work environment must be objectively offensive protecting employers from claims by an overly sensitive plaintiff. *Andrews,* 895 F.2d at 1483.

### 1. **Plaintiff Is Not An Employee Which Is Required To State A Claim Under Title VII**

Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful only for an **employer** to discriminate or retaliate **against its employees only**. 42 U.S.C. § 2000e-3(a) (emphasis supplied). Title VII defines an employee as "an individual employed by an employer." *Id.* at Section 2000e(f). *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 179 (3d Cir. 2009). An independent contractor is simply not an employee protected under Title VII. The Third Circuit has construed the definition of who is an independent contractor to incorporate traditional principles of agency law in determining employment status. *Id.* at 180. The relevant factors used in that determination are: (1) the skill required; (2) the source of the instrumentalities and tools; (3) the location of the work; (4) the duration of the relationship between the parties; (5) whether the hiring party has the right to assign additional duties to the hired party; (6) the extent of the hired party's discretion over hours of work; (7) the method of payment; (8) the provision of employee benefits; and (9) the tax treatment of the hired party. *Id.* (citing *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 323–24 (1992)). *See also Walters v. Metro. Educ. Enters., Inc.,* 519 U.S. 202, 211–12 (1997) (favorably citing *Darden* in a Title VII case).

Here, the undisputable and controlling evidence attached hereto mandates a finding that Plaintiff was an independent contractor, and accordingly not subject to Title VII's protection. More specifically, the tax treatment afforded to her and her completion of the independent

contractor tax form eliminating withholding requirements (attached as Exhibit "C") are the major indicators and most compelling factors in determining her independent contractor status. The actual non-withholding of taxes by the Company throughout Plaintiff's short tenure as an independent contractor, her non-receipt of benefits, her clearly parttime work on an as needed basis, her fulltime employment by Penn Medicine throughout the period she served the Respondent Bucky P.C., and the limited number of hours she worked for the Bucky P.C. (65 total hours over a nearly 10 month time period) clearly cement her status as an independent contractor for whom coverage under Title VII is barred as a matter of law in accordance with the dictates of the Third Circuit's opinion in *Brown v. J. Kaz, Inc. supra.* Accordingly, Plaintiff simply was never an "employee" covered under and afforded the protections of Title VII of the Civil Rights Act of 1964, as amended.

### 2. Plaintiff Has Not Stated A Claim For Retaliation

Retaliation claims under Title VII (and the PFPO) are likewise analyzed under the *McDonnell Douglas* burden-shifting framework. *Moore v. City of Philadelphia,* 461 F.3d 331, 342 (3d Cir. 2006). However, unlike Plaintiff's discrimination claims, a retaliation claim is subject to a much more stringent standard. *See University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 360 (2013). In *Nassar*, the United States Supreme Court announced that a plaintiff asserting a Title VII retaliation claim must prove the retaliation claim "….according to traditional principles of but-for causation, not the lessened causation test [i.e. motivating factor] stated in §2000e-2(m) [which is a more demanding standard]. *Id.* This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* In short, Plaintiff must establish that her "protected activity was the but-for-cause of the alleged adverse action by [Defendant]." *Id.*

Instantly, Plaintiff cannot even set forth a *prima facie* retaliation claim, let alone satisfy this heavier standard.

To establish a *prima facie* claim of retaliation, Plaintiff must demonstrate that: (1) she engaged in an activity protected under the anti-discrimination statutes; (2) defendant took adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse employment action. *Burlington, 548* at 59-60; *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2000).  To demonstrate protected activity, Plaintiff must establish that she filed a charge of discrimination with an outside agency or court, made a formal or informal protest of discrimination to his employer or otherwise protested about discriminatory practices to management.  *See Mikell v. Marriott International, Inc.*, 789 F. Supp.2d 607, 618 (E.D. Pa. 2011) )("protected activity extends beyond the formal complaints filed with the EEOC or the PHRC, and can include 'informal protests of discriminatory employment practices, [such as] making complaints to management, … [and] protesting against discrimination by industry or society in general.'")(internal citations omitted). With respect to the required complaint, this Court specifically recognized that in the Third Circuit:

> "[A] general complaint of unfair treatment is insufficient to establish protected activity under Title VII" and .. "opposition to an illegal employment practice must identify the employer and the practice – if not specifically, at least by context." [internal citations omitted] "[C]omplaints must be specific enough to notify management of the particular type of discrimination at issue in order to constitute 'protected activity.'"

*Id.*, at pp. 618-19.  *See also Eldridge v. Municipality of Norristown*, 828 F. Supp.2d 746, 763 (E.D. Pa. 2011). Additionally, the practices complained about must be a practice made unlawful under Title VII.  *Ferra v. Potter*, 324 Fed. Appx. 189, 192 (3d Cir. 2009).

Applying the above, in *Barber v. CSX Distribution Services*, 68 F.3d 694, 702 (3d Cir. 1995), the court found that a vague letter written by an employee complaining about unfairness was not protected activity for purposes of establishing a retaliation claim because it did not oppose a practice made unlawful by the ADEA. *Barber*, 68 F.3d at 701. Similarly, in *Eldridge*, *supra.*, the court held that an email raising general concerns about civil liberty violations without identifying any type of discrimination was not protected activity for purposes of stating a *prima facie* claim of retaliation. *Eldridge*, 828 F.Supp.2d at 763. *See also Ferra*, 324 Fed. Appx. at 192 (grievances and complaints with the EEOC that did not oppose practices made unlawful under Title VII do not constitute protected activity); *Mikell*, 789 F. Supp.2d at 619 (a complaint that described activity and used the word discrimination is not deemed protected activity because it did not identify the action described as discriminatory and did not mention the protected class).

With respect to the second element, the Supreme Court has held that an employee must demonstrate that the retaliatory action taken was "materially adverse" such that the action would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68. While the Supreme Court broadened this standard and clarifies that an adverse employment action need not be directly related to the employee's employment status, the Court did not alter the line of law holding that mere annoyances and petty behavior do not give rise to a retaliation claim. The Supreme Court specifically stated: "[w]e speak of material adversity because we believe it is important to separate significant from trivial harms…an employee's decision to report discriminatory behavior cannot immunize an employee from those petty slights or minor annoyances that all employees experience." *Id. See also Hanani v. State of New Jersey Dept. of Environmental Protection*, 205 Fed. Appx. 71, 80,  2006 WL 3246507 at **8-9 (3d Cir. Nov. 9, 2006)(holding

that even after *Burlington Northern*, plaintiff must still show that the adverse employment action was severe and pervasive).  For purposes of this Motion only, Defendant will assume for this Motion only that all of these actions would constitute material adverse actions for purposes of her retaliation claim.

Last, Plaintiff must establish the requisite causal link to satisfy the final element of her retaliation claim.  To establish a causal connection, Plaintiff must present circumstances that justify an inference of retaliatory motive. *Jalil v. Avdel Corp.*, 873 F.2d at 701, 709 (3d Cir. 1989). Plaintiff can meet this burden by establishing temporal proximity or by evidence of antagonism after she engaged in protected activity. *Azzaro v. County of Allegheny*, 110 F.3d 968, 973-974(3d Cir. 1997).

Here, Plaintiff has not alleged that complained to anyone about discrimination or harassment.  Therefore, she cannot state a claim for retaliation.  To the extent she relies on an incident by another female (who was an actually employee) that occurred in June 2016, Plaintiff cannot demonstrate the requisite temporal proximity.  *See Johnson v. Souderton Area Sch. Dist.*, Civ. A. No. 95-7171, 1997 WL 16426470 at *8 (E.D. Pa. April 1, 1997)(a period of 4 and 9 months between protected activity and alleged adverse actions too large to establish causal nexus); *Woods v. Bentsen*, 889 F. Supp. 179, 187 n. 15 (E.D. Pa. 1995) Therefore, she is unable to establish a *prima facie* retaliation claim.

### C.    Defendant Company, The Center And Dr. Bucky Are Not An "Employer" That Can Be Held Liable Under The Relevant Statutes And Dr. Bucky Cannot Be Held Individually Liable As An Aider and Abettor Under the PFPO

Under both Title VII and the Philadelphia Ordinance , it is unlawful for an **employer**:

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000(e)(2).

As defined under Title VII and the Philadelphia Ordinance

[t]he term "**employer**" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person...

42 U.S.C. § 2000(e)(1)(emphasis supplied).   For the reasons set forth above, Plaintiff was employed by Penn Medicine and the Defendants are not her employer.

Additionally, and more significantly, Dr. Bucky cannot be held liable under Title VII. The Third Circuit Court of Appeal's disposition on individual liability under Title VII is clear that Congress did not intend to enact individual liability with this statute. *See Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 184 (3d Cir.1997) (citing *Sheridan v. E.I. DuPont de Nemours and Co.,*100 F.3d 1061 (3d Cir.1996)); *Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996).   In addition, this court has affirmed that the "relief granted under Title VII is against the employer, not individual employees whose actions constituted a violation of the Act." *Goodwin v. Seven Up Bottling Co. of Philadelphia*, 1996 W.L. 601683, *3 (E.D. Pa. 1996).   The *Goodwin* court relied on the *Dici* Court cited above, when making its determination that the plaintiff as a matter of law failed to state a title VII claim, thereby dismissing the individual defendants. *Id.*

Recognizing that Dr. Bucky cannot be held liable under Title , Count V of Plaintiff's Complaint purports to set forth claims against him for violations of the Philadelphia Ordinance on grounds that he aided and abetted the unlawful conduct affected by the Company.  While the Philadelphia Ordinance imposes individual liability on persons who aid, abet, insight, compel or

coerce, or directly or indirectly commit unlawful discrimination or retaliation, Plaintiff cannot

establish this claim.  Specifically, because she is unable to establish a claim against the Company

under Title VII, there is no unlawful activity that Dr. Bucky could have "aided or abetted."  *See*

*Williams v. Aramark Campus LLC*, Civ. A. No.18–5374, 2020 WL 1182564, \*10 (E.D. Pa.

March 12, 2020) ( "for liability to be imposed on an aiding and abetting theory... there must be a

cognizable predicate offense, i.e., a violation by the employer of  [a]... primary anti-

discrimination provision").  Accordingly, dismissal is proper on Plaintiff's PFPO claim alleging

individual liability against D. Bucky as an aider and abettor.

> **D.      The Pennsylvania Common Law Claims Set Forth in Count VI (Assault),**
> **Count VII (False Imprisonment), Count VIII (Intentional Infliction of**
> **Emotional Distress), Count IX (Negligent  Infliction of Emotional Distress**
> **and Count XII (Negligence), Are Governed By Pennsylvania's Two Year**
> **Statute Of Limitations And Must Be Dismissed Because They Are Untimely**
> **As Temporally Defined By the Allegations of Plaintiff's Complaint**

In Pennsylvania, pursuant to 42 Pa. C.S.A. § 5524, the following applicable actions and

proceedings must be commenced within two years:

- An action for assault, battery, or false imprisonment.

- An action to recover damages for injuries to the person caused by the wrongful act or
  neglect or unlawful violence or negligence of another.

- Any other action or proceeding to recover damages for injury to person or property which
  is founded on negligent, intentional, or otherwise tortious conduct or any other action or
  proceeding sounding in trespass.

A statement that a claim is barred by an applicable statute of limitations is normally

an *affirmative defense* , and "plaintiffs need not anticipate and attempt to plead around all

potential defenses."  Dismissal under Civil Rule 12(b)(6) on statute-of-limitations grounds is

"irregular," because the defendant bears the burden of proof on affirmative defenses.  Fed. R.

Civ. P. 8(c)). However, when the allegations of a complaint itself reveal that the case is barred by

the statute of limitations—and no factual development is otherwise needed—then dismissal can

19

be appropriate. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 383 (7th Cir. 2010) (explaining that "if it is plain from the complaint that the [statute of limitations defense is indeed a bar to the suit dismissal is proper without further pleading."). The motion to dismiss would be, in essence, treated as a motion for judgment on the pleadings under Civil Rule 12(c).

In the present matter Plaintiff has made the following claims under Pennsylvania common law that are governed by the two-year statute of limitations set forth in Count VI (Assault), Count VII (False Imprisonment), Count VIII (Intentional Infliction of Emotional Distress), Count IX (Negligent Infliction of Emotional Distress)  and Count XII (Negligence). The assaults that are alleged have taken place happened (1) during the Corporation's trip to Miami from April 29, 2021 through May 2, 2021 and (2) at a Philadelphia restaurant in June 2021. The false imprisonment is alleged to have occurred during a chance meeting at the Philadelphia restaurant in June 2021as set forth above and at another restaurant, the Barclay Prime steakhouse across the street from the Corporation's offices on an undefined date but while Plaintiff was still employed, *i.e.* before September 21, 2021. The intentional infliction and even negligent infliction of emotional distress were the direct results of events occurring during Plaintiff's tenure with the Company and the claim of negligence in Count XII  is only assigned as actionable arising from an undefined duty of care that was allegedly owed to Plaintiff by all Defendants.  Because these incidents are alleged to have occurred two years before the Complaint was filed, in each instance the two-year statute of limitations serves to bar any recovery by Plaintiff for these common law torts actions.

E.     **The State and Federal Sex Trafficking Allegations in Counts X and XI  Do Not Have Stated Applicable Statutes of Limitation, Are Governed by Analogous State Tort Claims Statutes of Limitation, and Are Therefore, Barred.**

In Count X of her Complaint, Plaintiff alleges that by inviting Plaintiff together with several other workers of the Company, Dr. Bucky violated the terms of a criminal statute that probits any individual who subjects another to "involuntary servitude".  Specifically, the Statute criminal sanctions with no provision for civil claims as follows:

§ 3012. Involuntary servitude

(a) Offense defined.--A person commits a felony of the first degree if the person knowingly, through any of the means described in subsection (b), subjects an individual to labor servitude or sexual servitude, except where the conduct is permissible under Federal or State law other than this chapter.

(b) Means of subjecting an individual to involuntary servitude.--A person may subject an individual to involuntary servitude through any of the following means:

(1) Causing or threatening to cause serious harm to any individual.

(2) Physically restraining or threatening to physically restrain another individual.

(3) Kidnapping or attempting to kidnap any individual.

(4) Abusing or threatening to abuse the legal process.

(5) Taking or retaining the individual's personal property or real property as a means of coercion.

(6) Engaging in unlawful conduct with respect to documents, as defined in section 3014 (relating to unlawful conduct regarding documents).

While the alleged actions of Dr. Bucky do not fit any of  the mandated terms of this criminal statute, even if the statute was civilly actionable, it would be barred by the analogous statute for common law tort claims for such actions of two years since the Complaint specifically sets forth that the Company trip to Miami during which the improper involuntary servitude actions were alleged to have been affected against Plaintiff, took place from April 29-May 2, 2021, well outside of the controlling  two year statute of limitations.  Moreover, the Complaint further quizzically asserts that damages should be allocated in accordance with the provisions of

18 Pa.C.S.A. § 5747 which singularly provides for a private right of action for victims whose electronic, wire, or oral communication are intercepted.

The federal sex trafficking claimed by Plaintiff in Count XII (redundantly misnumbered in the Complaint as Count XI) has even less application.  The two statutes relied upon deal only with the sex trafficking of children (18 U.S.C.A. § 1591- Sex trafficking of children or by force, fraud, or coercion) or the setting of a private cause of action for engaging in the same (18 U.S.C.A. § 1595).  In any case, the alleged actions that support the averments of federally prohibited sex trafficking also are based upon action in the Company trip to Miami for a trade conference from April 29, 2021 through May 2, 2021, again well beyond a borrowed two-year statute of limitations relating to similar torts.

**F.      Plaintiff has not satisfied the need to proceed pseudonymously**

Plaintiff has filed her Complaint using the pseudonym "Jane Doe" "to apparently avoid public disclosure of the sexual harassment she suffered. While Defendants are well aware of Plaintiff's real name having engaged in EEOC proceedings and a mediation process under the direction of  a former federal Magistrate Judge Ruetter, she has not sought leave of Court to proceed anonymously. By proceeding under the pseudonym "Jane Doe," Plaintiff is hiding behind a mask of anonymity, free to make allegations against the Defendant without being held accountable for her statements under her real name. Defendant is prejudiced by Plaintiff's use of a pseudonym because, as drafted, any person reviewing the allegations in this case will only be able to review Plaintiff's allegations of sexual harassment, without the context of the true identity of the individual making the allegations. Accordingly, Defendant moves this Honorable Court, pursuant to Federal Rule of Civil Procedure 12(e), for an Order for a more definite statement to require Plaintiff to prosecute this action in her real name.

The Third Circuit has held that a plaintiff's use of a pseudonym runs afoul of the public's right of access to judicial proceedings." The people have a right to know who is using their courts. And defendants  have a right to confront their their accusers." *Doe v. Meglass*, 654 F. 3d 404, 408 (3d Cir. 2011 )(plaintiff, who was accused by defendants of being a pedophile, was required to disclose his real name) (quoting *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997); citing *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979)). Federal Rule of Civil Procedure 10(a) also requires parties to a lawsuit to identify themselves in their respective pleadings.

The Third Circuit has established nine factors for courts to consider when deciding whether to allow a party to proceed anonymously:

1.      The extent to which the identity of the litigant has been kept confidential;
2.      The bases upon which disclosure is feared or sought to be avoided and the substantiality of these bases;
3.      The magnitude of public interest in maintaining confidentiality;
4.      Whether there is an atypically weak public interest in knowing the litigant's identity;
5.      The undesirability of an outcome adverse to the pseudonymous party and attributable to her refusal to pursue the case at the price of being publicly identified;
6.      Whether the party seeking anonymity has illegitimate ulterior motives;
7.      The universal level of public interest in access to the identities of litigants;
8.      Whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigants' identities, beyond the public's interest which is normally obtained; and
9. Whether the opposition to use of a pseudonym by counsel, the public, or the press is illegitimately motivated.

*Id.*at 409-10.

Certainly, a plaintiff should be permitted to proceed anonymously only in "exceptional cases." Considering the above factors in turn, it is clear that this is also not an "exceptional case" and the above factors strongly weigh in favor of disclosing Plaintiff's identity. First, while to date Plaintiff's name has been kept confidential in court filings, there can be no legitimate fear by

Plaintiff that she will be "harmed" in any cognizable manner by allowing her identity to be public. The only "harm" she can possibly allege that she may suffer is embarrassment. A plaintiff must show both a fear of severe harm and that such a fear is reasonable. Plaintiff here has not, and cannot, demonstrate that any harm would come to her if she were required to disclose her identity.

Plaintiff's unexplained allegation that she has used "a pseudonym to avoid public disclosure of the sexual harassment she suffered and the psychiatric treatment she received does not create a legitimate interest to allow her to proceed anonymously. The findings in *Meglass* makes clear that such fears (*i.e.*, fear of embarrassment and damage to personal and professional reputation) typically are insufficient to permit litigation under a pseudonym. *Meglass*, 654 F.3d at 408. Therefore, this factor weighs in favor of disclosure as well.

Third, the level of interest the public might have in maintaining Plaintiff's anonymity is not unusually high. She is not a minor or a member of some other particularly vulnerable class. *See, e.g.*, Fed. R. Civ. P. 5.2(a) (requiring redaction of minor's full name in court filings); *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1063 (9th Cir. 2000) (plaintiffs permitted to proceed under pseudonym where they demonstrated that they feared "that if their true identity is revealed, they will face actual physical violence, the threat of physical violence, immediate deportation to China or their country of origin, likely arrest upon arrival in China or their country of origin and an order by China and other authorities accelerating the repayment of debt incurred for recruitment fees and that they reasonably fear that their families may face similar threats of physical and economic retaliation if their true identity is revealed.") (quotations omitted). Moreover, none of the areas where courts have allowed pseudonyms are present here (*i.e.*, cases involving "abortion, birth control,

tran[s]sexuality, mental illness, welfare rights of illegitimate children, AIDS, . . . ." and individuals bringing Constitutional challenges to amendment to Megan's Law requiring the publication of their information in the sex offender registry). Further, there is no evidence that requiring Plaintiff to disclose her identity will deter other similarly situated plaintiffs from suing in the future. Therefore, this factor also weighs in favor of disclosure.

Fourth, there is no atypically weak public interest in knowing Plaintiff's identity due to the nature of the issues presented. Thus, this factor weighs in favor of disclosure.

Fifth, there is no evidence, or even a suggestion, that Plaintiff will dismiss her claim or choose not to pursue her claims if her identity is disclosed. This factor, therefore also weighs in favor of disclosure.

Sixth, it is unclear whether Plaintiff has an ulterior motive attached to her desire to use a pseudonym; however, there does not seem to be any legitimate interest in her doing so.

Seventh, the public has a right to know who is using their courts and defendants have a right to confront their accusers. *Id.* This factor weighs heavily in favor of the disclosure of Plaintiff's identity.

Accordingly, as the Meglass factors weigh heavily in favor of having Plaintiff proceed using her real name and considering the requirements of Federal Rule of Civil Procedure 10(a), Defendant respectfully requests that Plaintiff be required to identify herself using her real name in the instant action. Plaintiff simply cannot show that she would suffer substantial harm that might outweigh the public interest in open proceedings or that the disclosure of her identity may cause her to suffer irreparable harm. *See Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004) (explaining the district court erred in permitting the plaintiff to proceed under pseudonym where the plaintiff alleged sexual harassment, and was not a "minor, a rape or torture victim, a

closeted homosexual, or a likely target of retaliation by people who would learn her identity only from a judicial opinion or other court filing."); *Rose v. Beaumont Indep. Sch. Dist.*, 240 F.R.D. 264, 267 (E.D. Tex. 2007) (requiring plaintiff alleging explicit sexual harassment and assault as a minor to disclose her true identity in her lawsuit seeking compensatory and punitive damages and collecting cases where other courts denied requests for anonymity by plaintiffs alleging sexual assault). Indeed, the court deals with cases alleging sexual harassment and assault on a regular basis and many of those cases involve circumstances far more sensitive than the conduct alleged here and the plaintiffs file the lawsuit under their own names. Accordingly, Plaintiff herein should be required to litigate this matter using her real name.

## **CONCLUSION**

Based upon the foregoing reasons, it is respectfully suggested Plaintiff's claims against Defendants have no basis in fact or law and must be dismissed in their entirety. Additionally, Plaintiff should not be permitted to pursue this matter pseudonymously.

Respectfully submitted,

/s/ *Alan B. Epstein*

Alan B. Epstein, Esquire
Pa. Atty. I.D. No. 02346
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, Seventh Floor
Philadelphia, PA 19103
(215) 241-/8817
Attorney for Defendants
*Defendants Louis P. Bucky, P.C., Louis P.*
*Bucky, (Individually) and Bucky Body*
*Center, individually and collectively*

Date: October 21, 2023