## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| JANE DOE | : | Jury Trial Demanded |
|  | : |  |
|  | : |  |
| Plaintiff, | : |  |
| v. | : |  |
|  | : | Civil Action No. 2:23-cv-04059-PD |
| LOUIS P. BUCKY M.D. P.C. | : |  |
| LOUIS P. BUCKY (individually), | : |  |
| BUCKY BODY CENTER | : | FIRST AMENDED COMPLAINT |
|  | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |
|  | : |  |

_____:

Plaintiff, JANE DOE, by and through undersigned counsel hereby files this First

Amended Civil Action Complaint against Defendants, Louis P. Bucky, M.D., P.C. (A

Professional Corporation),  Louis P. Bucky (individually), Bucky Body Center (collectively

"Defendants") and upon information and belief avers the following:

## PARTIES

1.      Plaintiff, JANE DOE ("Ms. DOE" or "Plaintiff") is an adult female who resides

in the Commonwealth of Pennsylvania.

2.      Plaintiff, JANE DOE is using a "Jane Doe" alias to protect her identity so that she

does not continue to experience the significant impact caused by Dr. Bucky's severe and

intentional sexual harassment, which Dr. Bucky has described in his own writing in the

handwritten letters on Louis Bucky stationary as identified herein.

3.      F.R.C.P.10(a) requires parties to a lawsuit to identify themselves in their

respective pleadings. Doe v. Meglass, 654 F.3d 404, 408 (3d Cir. 2011) (citing to F.R.C.P.10(a)).

4.      Despite F.R.C.P. 10(a)'s identification requirement, courts may permit litigants to proceed anonymously "in exceptional cases." See Id.

5.      When considering whether to permit a litigant to proceed anonymously, a district court operates with broad discretion. Doe v. C.A.R.S. Protection Plan, Inc., 572 F.3d 358, 371 (3d Cir. 2008).

6.      The litigant must demonstrate that they have "a reasonable fear of severe harm that outweighs the public's interest in open judicial proceedings." Meglass, 654 F.3d at 408 (quoting Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate, 596 F.3d 1036, 1043 (9th Cir. 2010)).

7.      The Third Circuit has endorsed a set of non-exhaustive factors when balancing these competing interests. Id. at 409.

8.      The factors that favor a litigant's request to proceed anonymously are:

(1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party king to sue pseudonymously has illegitimate ulterior motives. Id. (quoting Doe v. Provident Life and Acc. Ins. Co., 176 F.R.D. 464, 467 (E.D. Pa. 1997).

9.      The factors that weigh against a litigant's request for anonymity include:

(1) the universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.  Id. (quoting Provident Life, 176 F.R.D. at 467).

10.     Considering the public's interest in open court proceedings, courts have found that there is "an independent duty to determine whether 'exceptional circumstances' warrant a departure from the normal method of proceeding' in federal litigation." Freedom from Religion Foundation, Inc. v. New Kensington-Arnold School Dist., 2012 WL 6629643, at *3 (W.D. Pa. Dec. 19, 2012) (quoting Doe v. City of Chicago, 360 F.3d 667, 669 (7th Cir. 2004)); see also Doe v. County of Lehigh, 2020 WL 7319544, at *3 (E.D. Pa. Dec. 11, 2020) (Leeson, J.).

11.     An analysis of these factors weighs in favor of Plaintiff's request to proceed pseudonymously using a Jane Doe name-placer to protect the Plaintiff's identity.

12.     Defendant, Louis P. Bucky, M.D., P.C. is a business organization which is licensed to and regularly transacts business in the City of Philadelphia, within the Commonwealth of Pennsylvania with offices for the purposes of service at 230 West Washington Square, Suite 101, Philadelphia, Pennsylvania 19106.

13.     Defendant, Louis P. Bucky, M.D., individually is an adult male who is licensed to and regularly transacts business in the City of Philadelphia, within the Commonwealth of Pennsylvania with offices for the purposes of service at 230 West Washington Square, Suite 101, Philadelphia, Pennsylvania 19106.

14.     At all material times, Dr. Bucky was a board-certified doctor specializing in plastic and reconstructive surgery and related procedures.

15.     Defendant, Bucky Body Center is a business organization which is licensed to and regularly transacts business in the Commonwealth of Pennsylvania with offices for the purposes of correspondence at 230 West Washington Square, Suite 101, Philadelphia, Pennsylvania 19106 and 1915 Sansom Street, Philadelphia, PA 19103.

16.     At all material times, Dr. Bucky was the sole shareholder of the Practice and the Practice maintained two other offices at 200 West Montgomery Avenue, Ardmore, Pennsylvania 19003 and 1800 Rittenhouse Square, Philadelphia, Pennsylvania 19103 in addition to its principal place of business.

17.     Plaintiff JANE DOE was an employee of Dr. Bucky and worked in the City of Philadelphia.

18.     Defendant, Louis P. Bucky aided and abetted the gender discrimination, sexual harassment and retaliation alleged in this civil action complaint.

19.     At all times relevant to this Civil Defendants were Plaintiff's employer and employed at least twenty (20) employees.

20.     Plaintiff was one of Defendants' employees and worked for Defendants from 2020 until Plaintiff was forced to discontinue her employment for Defendants due to the sexual harassment of Dr. Louis Bucky.

21.     Under every legal analysis Plaintiff was an employee of Louis P. Bucky M.D. P.C., and it was understood by both Plaintiff and Dr. Louis Bucky that Plaintiff was an employee of Dr. Bucky.

22.     Dr. Bucky referred to Plaintiff as his employee on a regular basis both in words and in writings.

23.      Dr. Louis Bucky referred to himself as "the boss" of Plaintiff both verbally and in in writings.  For example, in one letter written to Plaintiff, Dr. Louis Bucky wrote:

> "Your ex-boss, lover and biggest supporter spent months answering,
> "why you."

24.     Dr. Louis Bucky described Plaintiff someone who worked everywhere with Dr. Bucky.  Dr. Bucky paid for several employees to accompany him to Miami including Plaintiff

which Dr. Bucky represented was part of Plaintiff's responsibilities as an employee of Dr.

Bucky.

25.     Dr. Bucky wrote about this trip to Miami, writing:

> "You have forgotten why you fell in love with me.  Because for a moment
> starting in Miami, you realized that you deserved better.  It progressed to
> laughing with me, working everywhere with me, work became fun, …"

25.     Defendant, Dr. Louis Bucky referred to Plaintiff as his employee and

called Plaintiff part of the Medical Practice's "A-Team."

26.     Dr. Louis Bucky referred to Plaintiff as part of his A-team often and

these statements were made both verbally and in writing.  For example, in another

letter written by Dr. Bucky to Plaintiff, Dr. Bucky wrote:

> "You and Jenette saved my professional life by becoming my A team.  I
> will always be grateful."

26.     Jeanette, the other person referred to by Defendant, Dr. Louis Bucky, was another

employee of Louis P. Bucky, M.D. P.C., who was a coworker of Plaintiff and who Plaintiff

worked with on a regular basis during Plaintiff's employment with Defendant.

27.     Defendant, Louis Bucky also described working with Plaintiff and wrote:

> ***"Jane Doe and Lou would take care of patients better than anyone by
> day."***

27.     Defendant, Dr. Louis Bucky also credited the employment of Plaintiff as helping

his build the best Operating Room team ever.  These comments were also said to Plaintiff both

verbally and in writing.  Dr. Louis Bucky wrote:

> ***"You and me and J Lo built the best OR team ever***."

28.     Again, the other people that Defendant, Dr. Louis Bucky named alongside of

Plaintiff are also employees of Louis P. Bucky, M.D. P.C.  J-Lo is a nickname that Dr. Bucky

used to refer to one of his longstanding employees who was a coworker of Plaintiff during

Plaintiff's employment for Defendant.

29.     Dr. Bucky constantly informed Plaintiff that she was part of his Operating Room

team.

30.     In the same letter Defendant, Dr. Bucky referred to Plaintiff as "***my scrub tech***…"

31.     After Plaintiff's employment for Defendants ended, Defendant, Dr. Bucky

informed Plaintiff that she could return to her former position anytime.  These comments were

also said to Plaintiff both verbally and in writing.

32.     In another letter, Dr. Bucky wrote:

> "You are always part of my O.R.  Whether you are there or not.  Or have
> permission?  Or not.  Welcome back anytime."

33.     Defendant, Louis Bucky called Plaintiff and another employee who he

referred to as "J-Lo as his "A-Team."  Dr. Bucky credited Plaintiff and J-Lo with

helping him build his medical practice.  These comments were also said to Plaintiff

both verbally and in writing.  Dr. Bucky wrote:

> "Because we built this w J Lo." (referring to his medical practice).

34.     While the payroll method, which looks at how many employees appear on a Title

VII defendant's payroll records for the applicable year, may be the primary method employed to

determine whether defendant has the requisite number of employees for liability under the

statute, it is not necessarily the only method; the ultimate touchstone is whether an employer has

employment relationships based on principles of agency law. O'Toole v. Tofutti Brands, Inc., 203 F. Supp. 3d 458 (D.N.J. 2016).

35.     Appearance of individuals' names on the payroll, alone, is not dispositive to the determination of whether a Title VII defendant has the required number of "employees" to be liable under the statute.  Id.

36.     Factors court considers when determining whether an individual is an "employee," for purposes of 15-person minimum required for a defendant's liability under Title VII include: (1) the skill required; (2) the source of the instrumentalities and tools; (3) the location of the work; (4) the duration of the relationship between the parties; (5) whether the hiring party has the right to assign additional projects to the hired party; (6) the extent of the hired party's discretion over when and how long to work; (7) the method of payment; (8) the hired party's role in hiring and paying assistants; (9) whether the work is part of the regular business of the hiring party; (10) whether the hiring party is in business; (11) the provision of employee benefits; and (12) the tax treatment of the hired party. Id.

37.     At all times, Plaintiff was an employee of Defendants and Defendants referred to Plaintiff as "an employee" and controlled all aspects of Plaintiff's employment including when Plaintiff worked, what tasks Plaintiff performed when she worked, and the way that Plaintiff was permitted to complete all work assignments.

38.     Defendant, Dr. Bucky has been accused of sexually harassing employees prior to Plaintiff.

39.     Accordingly, Dr. Bucky has prior knowledge related to Title VII claims involving sexual harassment.

40.     Dr. Bucky has been subjected to prior claims of sexual harassment which Dr. Bucky settled.

41.     At least one of those prior settlements for sexual harassment required Dr. Bucky to spend approximately $470,000 in settlement proceeds and attorney's fees.

42.     It would subvert the objectives of Title VII and other anti-discrimination laws if the harasser were permitted to decide whether the law applied to his own harassment.

28.     At all times relevant to this Civil, Plaintiff, JANE DOE was employed by and worked in the City of Philadelphia, in the Commonwealth of Pennsylvania such that Defendants were required to consider Plaintiff, JANE DOE's rights under the Philadelphia Fair Practices Ordinance and the Pennsylvania Human Relations Act.

26.     At all times Defendants were Plaintiff's joint and sole employers.

27.     At all times Plaintiff, JANE DOE was an employee of Defendants.

28.     Defendants' attempt to misclassify Plaintiff's employee status by suggesting that Plaintiff was an independent contractor is an intentional attempt to avoid liability under the same laws that were violated by Dr. Louis Bucky.

29.     At all times relevant to this Civil, Defendants and Louis P. Bucky specifically violated Plaintiff, JANE DOE's rights under the Philadelphia Fair Practices Ordinance and the Pennsylvania Human Relations Act, in addition to Title VII of the Civil Rights Act of 1964.

## NATURE OF THE CASE

30.     Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 20003-17 (amended in 1972, 1978, by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"); Title 43 PS Labor § 955, the Trafficking Victims Protection Act (TVPA) 18 U.S.C.A. §§ 1591, 1595; Sex Trafficking 18 Pa C.S.A. §§ 3012(b); the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, *et. seq.* ("PHRC"), under

the laws of the City of Philadelphia and the Commonwealth of Pennsylvania; and seeks damages to redress injuries Plaintiff suffered as a result of being subjected to by Defendants, sexual assault, sexual misconduct through force or the thread of force or coercion, sexual harassment, discrimination, harassment, retaliation and the hostile work environment which ultimately led to Plaintiff's unlawful termination from her employment for Defendants.  Accordingly, Plaintiff brings this Civil Action to redress injuries Plaintiff suffered as a direct result of violations of federal laws, the laws of the City of Philadelphia and the Commonwealth of Pennsylvania and seeks damages to redress injuries Plaintiff suffered as a result of being subjected to discrimination based on her sex and gender, sexually harassment, sexual assault, coercion, sexual abuse, and threatened with sexual misconduct, and subjected to a hostile and abusive work environment, and retaliated against by her employer for reporting and opposing the illegal conduct described herein.

## JURISDICTION AND VENUE

31.     This action involves a Question of Federal Law under Title VII of the Civil Rights Act of 1964.  The honorable Court also has supplemental jurisdiction over the Commonwealth Law Causes of Action and the causes of action under Philadelphia Ordinance.

32.     Venue is proper in the Eastern District of Pennsylvania as Plaintiff was employed by Defendants and worked in the Philadelphia County in the Commonwealth of Pennsylvania where the discrimination, harassment and hostile work environment complained of occurred.

33.     On or around June 2, 2022, Plaintiff, JANE DOE filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants as set forth herein.

34.     Plaintiff's Charge of Discrimination was dual filed with the Philadelphia Commission on Human Relations.

35.     Plaintiff's rights under the Philadelphia Fair Practices Ordinance are ripe for suit because it has been more than one year since Plaintiff's Charge of Discrimination was dual filed at the Philadelphia Commission on Human Relations which occurred in June 2022.

36.     Accordingly, at the time this civil action complaint was filed, all of Plaintiff's claims under Title VII, and the Philadelphia Fair Practices Ordinance are ripe for suit and Plaintiff has exhausted her administrative remedies with regard to all claims.

37.     On or about March 23, 2023, the EEOC issued and sent a Dismissal and Notice of Rights to Plaintiff which set forth the requirement that Plaintiff must file her lawsuit within ninety (90) days of the date when Plaintiff received the Dismissal and Notice of Rights.

38.     The Dismissal and Notice of Rights, also known as a Right to Sue letter provides Plaintiff with ninety (90) days from the date that the Right to Sue letter was received by Plaintiff to commence a lawsuit in court.

39.     At the request of the Defendants, Plaintiff agreed to enter into a tolling agreement so that the parties could schedule a mediation at JAMS and explore the possibility of a pre-litigation settlement.

40.     The parties have both fully executed a tolling agreement that provides that all of Plaintiff's causes of action pled below were tolled into today.

41.     This action is hereby commenced within the time period of the tolling agreement to which the parties entered.

## **MATERIAL FACTS**

42.     Plaintiff, JANE DOE began her employment for Defendants sometime in 2020 and Plaintiff continued her employment until Plaintiff, JANE DOE was unlawfully terminated from her employment.

43.     Upon beginning her employment, Defendant, Louis Bucky was Plaintiff's direct supervisor and the highest level of authority within the organization for which Plaintiff worked.

44.     Accordingly, Plaintiff's hostile work environment claims are subject to strict liability.

45.     Dr. Bucky earned his medical degree from Harvard Medical School in 1986.

46.     After graduation, Dr. Bucky was a resident in the General and Plastic Surgery Department at Massachusetts General Hospital in Boston, Massachusetts.

47.     Following his residency, Dr. Bucky completed a fellowship in breast cancer reconstruction at Memorial Sloan-Kettering Cancer Center in New York, New York, and a fellowship in craniofacial surgery at Miami Children's Hospital.

48.     Dr. Bucky is a clinical professor of surgery in the Division of Plastic Surgery at the University of Pennsylvania School of Medicine and Chief of Plastic Surgery at Pennsylvania Hospital.

49.     In or about the fall of 2007, Dr. Bucky left Penn Medicine where he had been practicing in plastic and reconstructive surgery from 1995 until the fall of 2007.

50.     Dr. Bucky formed the Practice in or about the fall of 2007 in order to perform cosmetic and reconstructive plastic surgery and related procedures for his patients.

51.     Before starting the Practice, Dr. Bucky did not need insurance for a business as Penn Medicine provided insurance coverage for such needs.

52.     From 2007 until 2016, Dr. Bucky's Practice grew to over twenty (20) employees with three (3) locations and increased revenue. See (Case 2:17-cv-00244-NIQA, Document 1, ¶ 22) (Where Dr. Louis Bucky pled in a civil action complaint involving insufficient coverage pursuant to another sexual harassment claim that he maintained more than twenty employees.

53.     In or about June of 2016, Dr. Bucky was served with notice of a prospective claim by a female employee of the Practice for alleged sexual harassment, creating a hostile working environment, and age discrimination ("prospective claim"). Id. ¶ 24.

54.     Defendants are aware of and have been accused of sexual harassment in the past such that Defendants decision to continue to sexual harass female employees who work for Dr. Bucky in his Philadelphia plastic surgery company constitutes reckless, indifference to the law requiring punitive damages be assessed.

55.     After Defendants were accused of prior allegations of sexual harassment involving Dr. Bucky, Defendants conduct and the sexual harassment got worse and Plaintiff was the victim of Defendants ongoing, conduct and willful violation of the law.

56.     Plaintiff was terminated from her employment due to Defendant, Louis Bucky's refusal to stop subjecting Plaintiff to severe and pervasive sexual harassment, which included several instances of quid pro quo sexual harassment, unwelcome sexual contact, countless instances of sexual misconduct, nonstop pressure applied to coerce JANE DOE to engage in sexual acts with Louis Bucky, several instances of sexual assault, and stalking which was documented by Louis Bucky himself in his handwritten letters.

57.     Louis Bucky used his position and power as the highest-level employee for the company where Plaintiff worked for, to coerce, manipulate, recruit, entice, pressure and threaten Plaintiff into unwelcome sexual acts with Louis Bucky.

58.     All of this was well documented by Louis Bucky on Louis Bucky stationary, written in Louis Bucky's personal handwriting, and given to Plaintiff, during Plaintiff's employment for Defendants.

59.     At all times relevant to this Civil, Plaintiff, JANE DOE was an employee of Defendants and held the position of Surgical Technologist.

60.     Louis Bucky subjected at least one other employee to sexual harassment that was allegedly severe and pervasive prior to Plaintiff, JANE DOE.

61.     Pursuant to the allegations of sexual harassment submitted by this other employee of Louis Bucky, Louis Bucky filed a civil action complaint arguing that Louis Bucky should have been better insurance coverage to pay the victim of the prior sexual harassment.

62.     In this civil action complaint, Louis Bucky pled that his company's "principal place of business" is in Philadelphia, Pennsylvania.  See Case 2:17-cv-00244-NIQA  ¶¶ 3 and 4.

63.     Defendant, Louis Bucky also pled that his company, which is the same company named in this lawsuit "grew to over twenty (20) employees with three (3) locations and increased revenue." See Case 2:17-cv-00244-NIQA  ¶ 22.

64.     Defendant, Louis Bucky also pled that he was the "sole shareholder of the Practice." ¶ 4.

65.     According to these three paragraphs offered by Louis Bucky in litigation filed in this Court, Defendant, Louis Bucky has confirmed that his business has the sufficient number of employees under Title VII of the Civil Rights Act of 1964.

66.     Defendant, Louis Bucky has also admitted to being a proxy for the company as there is no individual with more authority in the company other than Defendant, Louis Bucky.

67.     Moreover, Louis Bucky responded to the prior allegations of sexual harassment by purchasing a larger insurance policy and continuing to intentionally sexually harass employees, which included Plaintiff, JANE DOE.

68.     Defendants are strictly liable for the unlawful conduct of Louis Bucky as a matter of law, according to well settled Third Circuit caselaw recognizing Supreme Court cases holding that there is no affirmative defense when the illegal, sexual harassment comes from someone so high up in the company as to be an alter-ego for the company.

69.     The Faragher-Ellerth defense to a Title VII hostile work environment claim, which allows an employer to escape vicarious liability in cases where no tangible employment action has been taken, employer exercised reasonable care to prevent and correct harassing behavior, and plaintiff unreasonably failed to take advantage of preventative or corrective opportunities provided, *is unavailable when the alleged harasser is the employer's proxy or alter ego*. O'Brien v. Middle E. F., 57 F.4th 110 (3d Cir. 2023).

70.     Plaintiff, JANE DOE was employed by and worked in Defendants' Philadelphia offices located in Center City Philadelphia.

71.     Plaintiff, JANE DOE worked with Louis P. Bucky assisting with patients who visited Louis P. Bucky at Defendants' Philadelphia offices.

72.     Louis P. Bucky was the highest ranked employee and had  the ultimate decision-making authority to hire, fire, discipline, and make any other decisions related to the terms and conditions of Plaintiff, JANE DOE's employment.

73.     During Plaintiff's employment for Defendants, Louis Bucky subjected Plaintiff, JANE DOE to severe and pervasive sexual harassment in the workplace and outside the workplace, at all times using his authority and power as Plaintiff's ultimate supervisor to coerce and manipulate Plaintiff into engaging in sexual acts.

74.     Louis P. Bucky instructed Plaintiff JANE DOE to attend a plastic surgery conference in Miami Florida.

75.     The conference took place between April 29, 2021 and May 2, 2021.

76.     Plaintiff, JANE DOE's travel to Florida including airfare and hotel was paid for by Defendants which took place between April 29, 2021, and May 2, 2021.

77.     Louis Bucky admitted that he did not invite JANE DOE to Florida for a legitimate business purpose and informed JANE DOE that it was not important for her to attend the plastic surgery conference.

78.     Louis Bucky paid for JANE DOE to travel from the Commonwealth of Pennsylvania to the State of Florida, for the purpose of engaging Plaintiff in sexual acts.

79.     Defendant, Louis P. Bucky subjected Plaintiff, JANE DOE to sexual harassment during the conference in May 2021.

80.     Defendant Louis Bucky used the opportunity while JANE DOE was in Florida to solicit from JANE DOE sex and sexual acts.

81.     Defendant Louis Bucky tried to persuade JANE DOE to leave her husband and agree to a business relationship which included working for Louis Bucky in his officers during the day and agreeing to provide sexual acts for him at night.

82.     Louis Bucky offered JANE DOE money and other things of value as part of the quid pro quo sexual solicitation.

83.     Soliciting JANE DOE to leave her husband so that she could engage in sexual acts was a focus of Louis Bucky and Louis Bucky documented this objective in writing.

84.     Louis Bucky enticed JANE DOE across state lines in order to continue the sexual solicitation.

85.     The sexual harassment caused Plaintiff to feel emotional distressed, uncomfortable, manipulated, and used.

86.     Defendant, Louis P. Bucky asked Plaintiff, JANE DOE to visit Louis P. Bucky in Louis P. Bucky's hotel room.

87.     Plaintiff went to Louis P. Bucky's hotel room and Louis P. Bucky said, "I just have to do this" and then subjected Plaintiff, JANE DOE to unwelcome, physical touching of a sexual nature.

88.     Louis P. Bucky physically grabbed and restrained Plaintiff, JANE DOE and pressed his lips against the lips Plaintiff.

89.     Plaintiff, JANE DOE was visibly shaken, highly upset, and began crying when she returned to her own hotel room.

90.     During the dinner, Plaintiff, JANE DOE asked Louis P. Bucky, "why did you do that to me?"

91.     Plaintiff was referring to the unwelcome, physical touching, when Defendant, Louis P. Bucky forced himself upon Plaintiff in Defendant's Louis P. Bucky's hotel room.

92.     One of Plaintiff, JANE DOE's coworkers said  to Plaintiff, JANE DOE, "you are his new obsession," indicating Louis P. Bucky.

93.     The sexual harassment continued thereafter, and Louis Bucky increased his attempts to coerce and manipulate Plaintiff by convincing Plaintiff to leave her husband and begin a sexual relationship.

94.     Defendant, Louis Bucky described the way in which he envisioned the quid pro quo sexual relationship.

95.     Defendant, Louis Bucky described repeatedly in words or substances, "employee by day, sex at night."

96.     Defendant, Louis P. Bucky promised to provide value in exchange for sexual solicitation including the work by day, sex by night arrangement.

97.     Plaintiff was subjected to quid pro quo sexual harassment by Louis Bucky.

98.     Louis P. Bucky presented handwritten notes to Plaintiff where Louis P. Bucky described the employee by day, sex by night relationship.

99.     The handwritten notes detailed a toxic, unhealthy, sexual obsession with Plaintiff to which Louis Bucky refused to take "no" for an answer.

100.    Defendant, Louis P. Bucky responded to Plaintiff's rejections with emotional manipulation, ridicule, and distain for Plaintiff and Plaintiff's family.

101.    Louis Bucky told Plaintiff that Plaintiff's refusal of his sexual advances indicated something psychologically wrong with Plaintiff.

102.    Defendant, Louis P. Bucky disparaged Plaintiff's marriage and husband in his attempts to manipulate, coerce, entice, recruit Plaintiff to engage in a trade of working by day and engaging in sex by night.

103.    After the plastic surgery conference in Miami, Florida, Defendant, Louis P. Bucky ratcheted up the non-stop, attempts to manipulate, coerce, entice, recruit Plaintiff into the self-described work by day sex by night relationship.

104.    Defendant, Louis Bucky gave to Plaintiff a seventeen (17) page handwritten note written on "Bucky Body Center" stationary, which described in detail the sexual harassment, manipulation, and coercion that Plaintiff was subjected to for a continuous period of time without any pause or respite from the time the sexual harassment began until Plaintiff's employment ended.  The seventeen-page handwritten letter is attached and marked Plaintiff's Exhibit 1.

105.    Plaintiff's <u>Exhibit 1</u> reads:

**BUCKY BODY CENTER** — #1

Fear, Guilt + Love

Laura,
After yesterday, it is clear to me that nothing that I write to you will resonate today. However, I hope that you save this letter because it will ring very true Someday. And when you read this in the future, you will allow your "walls" to come down and you will reach out to the

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

man who shared with you unselfish, trusting, socially inclusive, radiating Pure love. This love has been pushed aside. But it never goes away, no matter how hard you try.

Your guilt, fear and history of manipulation and self described "self esteem" issues has allowed you to recreate history,

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

ignore the impact of your back & forth intentness, and allowed you to settle for a life that does not create real happiness + love.

"Working on my marriage" does not mean giving up on all the important things that you deserve. Waking up every day w a person that truly Believes in you,

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

That wants to build a wonderful giving world w you. Something that you are more than capable of achieving. "Working on my marriage" does not mean giving up on all the things that you worked so hard to achieve. ie Standing up for yourself, breaking the chains of emotional abuse, Being "Accountable" to

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

your closest friends and ...... ME!!

I want you to work on your marriage. But see him + you in a real, non biased, non delusional way. I don't want to be any part of this. Why? Because you won't be able to blame any of this on me.
One day you will wake

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

up and see your relationships for what it is.
The same way your closest friends who adore you + love you, see it. They won't change you, you will. And when you do, you will remember who you called when you "ripped the bandaid off" + needed a place to live.
who you shared your deepest feelings with

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

Over many years. Who your husband put his hands on her neck + you barely said anything.
Who knew you when you said you were happier than ever with low Bucky.
That same friend lived the tough times + happy times with you and rooted for us because she saw

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

you blossom + now sees you surrender to isolation, poor communication, and distance while you "work on your marriage" your ex boss, lover and biggest supporter spent months answering "why you".
The real unanswered question that you NEVER offered was, Why ∠ P.B.?

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

If you had stepped to answer that, and not let guilt + fear dominate keeping the peace, true love would have won. In order to do that, you have to love yourself. Stand up for yourself, not "work" on your marriage
you have forgotten why you fell in love with

@buckybodycenter | www.buckybodycenter.com

**BUCKY BODY CENTER**

me. Because for a moment Starting in Miami, you realized that you deserved better. It progressed to laughing with me, working everywhere with me, work became fun, friends gathered around and everyone invested in Lou & LoveA Why? Because you began to open up and feel

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

like you were worth it? I already knew that. your strength, WARMTH, friendship, quiet support and love meant Everything to me,

It is now gone, Pushed down someplace with all the other valuable lessons that you learned over the last 6 months. I am the most persistent, annoying,

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

relentless individual When it comes to you. Why? Because I have had a front row seat watching your guilt & fear own you while you have given up. HARD to watch, HARDER to be "ying-yanged" or yo-yo'd thru all of this

The people closest to you, still love you.

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

They were there when you reached out. They know the real history They saw the truly happy Hooch. They will be there if you ever went to come back. But they (and me) know the real Story.

I predict that you will awaken some day

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

(Even you said that I'm the smartest man that you know)

When you awaken & realize what you truly deserve, realize that you have much to give, realize that you can be an incredible example to your daughter about trusting consistent love,

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

your friends will be there. Because they saw the real you.

I will be there, because I lived, tasted, laughed & held the real you, I still believe in you. You can always reach out & know that I will forgive you for

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

What you said to me yesterday. Because everyone deserves a second chance!!

The stars say that there is an 85% chance for magical, true love for Taurus & Pisces. I'm bullish and dream of the day that I don't

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

ever have to do this again.

Lou

@buckybodycenter | www.buckybodycenter.com

106.     Defendant, Louis Bucky refused to accept Plaintiff's rejections and continued the illegal, unwelcome, harassment.

107.     The transcription of <u>Exhibit 1</u> reads:

"after yesterday, it is clear to me that nothing that I write to you will resonate today.  However, I hope that you save this letter because it will ring very true someday.  And when you read this in the future, you  will allow your "walls" to come down and you will reach out to the man who shared with you unselfish, trusting, socially inclusive, radiating, pure love.  This love has been pushed aside.  But it ***never goes away, no matter how hard you try***.  Your Guilt, fear and history of manipulation and self-described "self-esteem" issues has allowed you to recreate history, ignore the impact of your back and forth intentions, and allowed you to settle for a life that does not create real happiness and love.  "Working on my marriage" does not mean giving up on all the important things that you deserve.  Waking up every day w a person that truly believes in you.  That wants to build a wonderful giving world w you.  Something that you are more than capable of achieving.  "Working on my marriage" does not mean giving up on all the things that you worked so hard to achieve, i.e., standing up for yourself, breaking the chains of emotional abuse, being accountable to your closest friends and ….. ME!!!  I want you to work on your marriage.  But see him and you in a real non biased non delusional way.  I don't want to be any part of this.  Why?  Because you won't be able to blame of this on me.  One day you will wake up and see your relationship for what it is.  The same way your closest friends who adore you and love you see it.  They won't change you, <u>you will</u>.  And when you do, you will remember who you called when you "ripped the band aide off" and needed a place to live.  Who you shared your deepest feelings with over many years.  Who your husband put his hands on her neck and you barely said anything.  Who knew you when you said you were happier than ever with Lou Bucky.  That same friend lived the tough times and happy times with you and rooted for us because she saw you blossom and now sees you surrender to isolation, poor communication and distance while you "work on your marriage."  Your ex-boss, lover and biggest supporter spent months answering, "why you."  The real unanswered question that you <u>NEVER</u> offered was why LPB.?  If you had stopped to answer that, and not let guilt and fear dominate keeping the peace, true love would have won. In order to do that you have to love yourself.  Stand up for yourself, not "work" on your marriage.  You have forgotten why you fell in love with me.  Because for a moment starting in Miami, you realized that you deserved better.  It

progressed to laughing with me, ***working everywhere with me***, work became fun, friends gathered around and <u>everyone</u> invested in Lou and Jane Doe. Why?  Because you began to open up and feel like you were worth it!  I already knew that your strength, <u>warmth</u>, friendship, quiet support, and love meant everything to me.  It is now gone.  Pushed down someplace with all the other valuable lessons that you learned over the last 6 months.  ***I am the most persistent, annoying, relentless individual when it comes to you***. Why?  Because I have had a first-row seat watching your guilt and fear own you while you have given up.  Hard to watch.  Harder to be yin-yanged or yo-yoed through all of this.  The people closest to you still love you.  They were there when you reached out.  They know the real history.  They saw the truly happy Hooch.  They will be there if you ever want to come back.  But they (and me) know the real story.  I predict that you will awaken someday. (Even you said that I'm the smartest man that you know).  When you awaken and realize what you truly deserve, realize that you have much more to give, realize that you can be an incredible example to your daughter about trusting consistent love, your friends will be there.  Because they saw the real you.  I will be there because I lived, tasted, laughed and held the real you.  I still believe in you.  You can always reach out and know that I will forgive you for what you said to me yesterday.  Because everyone deserves a second chance!!  The stars say that there is an 85% chance for magical, true love for Taurus and Pisces.  I'm bullish and dream of the day that I don't ever have to do this again.  Lou.  (sic)

108.    This handwritten letter was drafted by Defendant, Louis P. Bucky after the plastic surgery  conference in Miami, on Bucky Body Center stationary.

109.    Plaintiff was frightened by  Defendant, Louis P. Bucky because he was "the most persistent, annoying, relentless individual when it" came to JANE DOE.

110.    Plaintiff indicated no interest in the sexual propositions.

111.    Defendant, Louis Bucky emotionally manipulated and coerced Plaintiff, telling her she would be a "better example to your daughter" if Plaintiff agreed to Defendant's sexual proposals.

112.    Defendant, Louis Bucky did not stop the sexual harassment and the quid pro quo sexual advances continued including Louis Bucky not allowing JANE DOE any peace, even when she was with her family.

113.    Louis Bucky wrote about his harassment and refusal to stop the stalking.

114.    Louis P. Bucky continued the sexual harassment.

115.    On October 6, 2021, Louis P. Bucky penned another handwritten letter and gave it to Plaintiff.  The Handwritten letters are attached as Plaintiff's Exhibit 2.



**BUCKY BODY CENTER**

The happiest spring / summer that I can remember. We laughed, we teased, we talked, we shared, We kissed, we held, we hugged, we kissed, we held. We told each other ~~we~~ I love you daily. Simple, not complicated. No yelling, No screaming, No lying, No hiding. No half truths just time spent in the OR & out.

@buckybodycenter | www.buckybodycenter.com

**BUCKY BODY CENTER**

You let me take care of you!! In miami and beyond, I met the happy Laura. The most beautiful woman that I know. My Laura. Little old LAURA. My entire focus was to tell this slightly injured woman that she was special, worthy and I loved & respected her.

@buckybodycenter | www.buckybodycenter.com

**BUCKY BODY CENTER**

Her daughter saw how happy she was at sixer games. Our friends celebrated our obvious love because it was REAL. No changes necessary, no therapy, just an occasional conversation about how astounded that you were that you couldn't stop thinking about me. I told you that this is the definition of Real love

@buckybodycenter | www.buckybodycenter.com

**BUCKY BODY CENTER**

J Lo loved us. Kareem, VAL, Erin loved us. I LOVED us. I chose you. you were my Vivian! It was Real. The stars agreed, Our souls agreed, Our touch agreed,

I shared my dream with you. LAURA & Lou would take care of patients better than anyone by day,

@buckybodycenter | www.buckybodycenter.com

**BUCKY BODY CENTER**

And we would take care of each other by night. Our love would take care of our friends, our families and we could be generous with anyone that we would meet!!

Laura + Lou  Love!!
Fresh, clean, strong, smart. A beautiful growing love. Dinners, Drives, Talks and walks. Most of the time, no talk necessary.

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

Everyone liked being with us becaus we oozed love + friendship.

Pinky's up, chop sticks, tuna tartare, spicy margaritas, 1/2 sandwiches, city wide search for espresso martinis. Staying out too late didn't matter becaus I would see the beautiful you in the morning.
I Respected US.

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

You me + J Lo built the best OR team ever!! We were just beginning. I chose you! I wanted to give you everything that I had for no reason other than I loved you.

I reminded you that the past was yours, but you could make your own future. And your future in me

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

could be awesome. A difficult journey no doubt, but we had each other. Helping others together by day, helping each other at night.
Anything for you, your family, your economics, your sense of self and of course your ears surrounding those beautiful blue eyes.

@buckybodycenter | www.buckybodycenter.com

**BUCKY BODY CENTER**

Most importantly, I loved your breast and your love for me.
You made me feel strong, handsome, and worthy. You made me the happiest.

Then your phone calls got traced, your personal items ransacked you were traced,

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

lied to, isolated and allowed yourself to be placed in jail.

Your husband changed for you because he realized that he might lose you. He continued his manipulation & behavior and you have bought in completely. He berated your best friend, he lied about cameras & cars. Yet since the day that

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

you were caught you have migrated to him. You call it simple, I call it Guilt. Guilt that was not necessary except that you have been used to 20 years of manipulation & loss of self esteem. Since that happened I've been out except for a few periods of weakness

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

When you thought that you might need to leave, I lived all these Roller coasters with you, because I believed in us. I believed in true love I believed in you.

Problem is that you don't. you will one day you are textbook, but have to want to evolve. The past is difficult

@buckybodycenter | www.buckybodycenter.com

**BUCKY BODY CENTER**

to escape, but
the future is worth
it. A normal, embracing
happy future. No talk
necessary.

LASTLY, It was this
awful roller coaster ride
that near killed me.
I'm 35 lbs lighter, but
you were worth
it. Why —
We were a team!

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

A team by day
w J Lo + others
and potentially a team
at night if all worked
out. Just last week
you asked me
how I was and I
fearfully answered not too
good. I lost my best
friend, my scrub tech
and my lover, you told
me that I didn't, As far

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

Ask yourself, how
you could treat your best
friend, soul mate and
at 1 point true love like
this?

I don't believe that this
is truly you. I've lived v
the warm LAURA. This is
the injured LAURA.

LASTLY, ask anyone
about the happy LAURA
the existed 5 months

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

ago. It was easy!!
What happened to her,
cause she hasn't been
around too much.

I will never forget our
good times, I will always
want want you on my team.
We were supposed to be
together. Hoever, your parents
J Lo, our friends and
God want want the best for
you, His name is Lou Bucky

@buckybodycenter | www.buckybodycenter.com



116.    The October 6, 2021, handwritten letter transcription reads (Exhibit 2):

L – I never thought that I would write this letter.  For years, I felt a strong friendship with you.  Never got too close, but always knew that there was something special with us.  Hoover passed away and I remember seeing you in church at his funeral and had a serene sense of comfort when you looked back at me.  You and Jenette saved my professional life by becoming my A team.  I will always be grateful.  As the 2 years passed it was clear to me that you were not happy.  I was supportive, wishing you the best but perplexed as to how you put up with all the neglect, isolation, overwork, and lack of connection with your husband.  Nonetheless, I respected your marriage.  It wasn't until last spring, 6 months ago, that I realized that you were a classic example of neglect, emotional and psychological abuse.  At the same time, we grew close, spent more time together and fell in love!  The happiest Spring/Summer that I can remember.  We laughed, we teased, we talked, we shared.  We kissed, we held, we hugged, we kissed, we held.  We told each other I love you daily.  Simple noncomplicated.  No yelling, no hiding.  No half truths, just time spent in the or out.  You let me take care of you!!  In Miami and beyond I met the happy Jane Doe.  The most beautiful woman that I know.  My Jane Doe.  Little old Jane Doe.  My entire focus was to tell this slightly injured woman that she was special, worthy and I loved and

respected her. Her daughter saw how happy she was at sixer games. Our friends celebrated our obvious love because it was real. No changes necessary, no therapy, just an occasional conversation about how astounded that you were that you couldn't stop thinking about me. I told you that this is the definition of real love. J Lo loved us. Karen, Val, Erin loved us. I loved us. I chose you. You were my Vivian! It was real. The stars agreed, our souls agreed. Our touch agreed. I shared my dream with you. ***Jane Doe and Lou would take care of patients better than anyone by day. And we would take care of each other by night***. Our love would take care of our friends, our families and we could be generous with anyone that we would meet!! Jane Doe and Lou Love!! Fresh, clean, strong, smart. A beautiful growing love. Dinners, drives, talks, and walks. Most of the time, no talk necessary. Everyone like being with us because we oozed love and friendship. Pinky's up, chop sticks, tuna tartar, spicy margaritas, ½ sandwiches, city wide search for espresso martinis. Staying out too late didn't matter because I would see the beautiful you in the morning. I respected us. ***You and me and J Lo built the best OR team ever***. We were just beginning. I chose you! I wanted to give you everything that I had for no reason other than I loved you. I reminded you that the past was yours, but you could make your own future. And your future w me (sic) could be awesome. A difficult journey no doubt, but we had each other. ***Helping others together by day, helping each other by night***. ***Anything for you, your family, your economics***, your sense of self and of course your ears surrounding those beautiful blue eyes. Most importantly, I loved your heart and your love for me. You made me feel strong, handsome, and worthy. You made me the happiest. Then your phone calls got traced, your personal items ransacked, you were traced, lied to, isolated and allowed yourself to be placed in jail. Your husband changed for you because he realized that he might lose you. He continued his manipulative behavior and you have bought in completely. He berated your best friendship, he lied about cameras and cars. Yet since the day that you were caught you have migrated to him. You call it simple, I call it guilt. Guilt that was not necessary except that you have been used to 20 years of manipulation and loss of self-esteem. Since that happened, I've been out except for a few periods of weakness when you thought that you might need to leave. I loved all these roller coasters with you because I believed in us. I believed in true love. I believed in you. Problem is that you don't. You will one day you are textbook, but have to want to evolve. The past is difficult to escape, but the future is worth it. A normal embracing happy future. No talk necessary. Lastly, it was this awful roller coaster ride that near killed me. I am 35 lbs lighter, but you were worth

it.  Why – we were a team! ***A team by day w J Lo and others and potentially a team at night if all worked  out***.  Just last week you ask me how I was and I tearfully answered not too good. I lost my best friend, ***my scrub tech***, my lover!  You told me that I didn't! As far.  Ask yourself how you could treat your best friend, soul mate and at 1 point true love like this?  I don't believe that this is truly you.  I've lived w the warm Jane Doe.  This is the injured Jane Doe.  Lastly, ask anyone about the happy Jane Doe the existed 3 months ago.  It was easy!!  What happened to her, cause she hasn't been around too much.  I will never forget our good times, ***I will always want you on my team***.  We were supposed to be together.  Hoover, your parents, J Lo, our friends and God want the best for you.  His name is Lou Bucky.  ***Set an example for your daughter*** and others on how to live the life that you deserve.  Open your heart, be accountable to yourself and stop taking the easy road you have a long, wonderful life ahead of you.  Love Lou. (sic).

117.    The letters from Defendant, Louis P. Bucky and his conduct toward Plaintiff became more manipulative, filled with psychological abuse.

118.    Defendant, Louis P. Bucky continued to subject Plaintiff to manipulation, coercion, and recruitment to agree to leave her husband and work by day and engage in sexual acts at night.

119.    Defendant, Louis Bucky told Plaintiff that she was his "A-team" and that she was his best worker and technician.

120.    Defendant, Louis P. Bucky continued the manipulation and sexual harassment invoking god and a friend who had passed away, stating that everyone that cared about Plaintiff wanted Plaintiff to leave her husband and engage in the quid pro quo sexual arrangement.

121.    Plaintiff continued to decline the advanced and make it clear that the harassment and abuse was not welcome.

122.    Defendant, Louis P. Bucky continued the harassment and sexually abusive conduct and comments trying to convince Plaintiff to leave her husband and begin the sexual arrangement – work by day sex at night.

123.    Plaintiff, JANE DOE continued her employment with Louis P. Bucky until the final months of 2021.

124.    Throughout Plaintiff's employment Defendant, Louis P. Bucky subjected Plaintiff, JANE DOE to severe and pervasive sexual harassment that included multiple instances of unwelcome physical contact of a sexual nature such that Plaintiff was subjected to sexual assault and battery by Defendant, Louis Bucky.

125.    The sexual harassment to which Plaintiff was subjected was severe and pervasive and included daily, nonstop sexual solicitation, stalking, constant calling, refusing to leave JANE DOE alone when she was with her husband and child.

126.    When Plaintiff rejected the sexual advances, Defendant Louis P. Bucky became physically aggressive and subjected JANE DOE to multiple incidents of sexual assault.

127.    Plaintiff rejected the sexual advances and Defendant Louis P. Bucky became emotionally more aggressive.

128.    Plaintiff rejected the sexual advances and Defendant Louis P. Bucky became manipulative and coercive in his attempts to recruit Plaintiff into the sexual relationship.

129.    Plaintiff rejected the sexual advances and Defendant Louis P. Bucky began to offer Plaintiff money and other things of monetary value.

130.    Evidence of this was included in the letters that Defendant wrote and gave to Plaintiff.

131.    By way of example, Defendant, Louis P. Bucky wrote: "Helping others together by day, helping each other by night.  Anything for you, your family, your economics, your sense of self and of course your ears surrounding those beautiful blue eyes."  A copy of this letter is attached as Exhibit 2.

132.     This language used by Defendant referred to the employee-employer relationship and Plaintiff's job of helping Defendant with patients in Defendant's medical practice.

133.     Defendant, Louis P. Bucky repeatedly use language reminding Plaintiff that she was an employee.

134.     Defendant, Louis Bucky also reminded Plaintiff that he wanted to treat Plaintiff like a prostitute and pay for the sexual arrangement.

135.     In one of Defendant's handwritten letters, Louis Bucky refers to Plaintiff as "my Vivian."   This was a reference to a fictional prostitute, Vivian Ward, played by Julia Roberts. Vivan Ward was a prostitute who was solicited for sex by a wealthy benefactor.

136.     Defendant, Louis Bucky referred to Plaintiff as "his Vivan" many times including in handwritten letters on Bucky Body Center stationery.  Exhibit 2.

137.     Defendant, Louis P. Bucky described the employee-employer relationship in further detail in a handwritten letter:

      a    "Jane Doe and Lou would take care of patients better than anyone by day.  And we would take care of each other by night."

      b    "Helping others together by day, helping each other by night."

      c    "A team by day w J Lo and others and potentially a team at night if all worked  out."

      A copy of this letter is attached as Plaintiff's Exhibit 2.

138.     Defendant, Louis P. Bucky repeatedly described his objectives of having an employee who would have sex with him at night and work with him during the day. Exhibits 1 and 2.

139.    "Persistent, annoying and relentless" are the precise words that Defendant, Louis

P. Bucky used to describe his own sexual misconduct and sexual harassment of Plaintiff, JANE

DOE. Exhibit 1.

140.    Defendant, Louis P. Bucky used Plaintiff's family including her daughter in his

attempts to lure Plaintiff, JANE DOE into a quid pro quo, sexual relationship. Exhibits 1 and 2.

141.    Defendant, Louis P. Bucky used his wealth to manipulate and persuade Plaintiff

into a quid pro quo sexual relationship.

142.    Defendant Louis P. Bucky said both verbally and in writing that engaging in a

sexual relationship with Defendant, Louis P. Bucky would make Plaintiff, JANE DOE's daughter

and family happy. Exhibits 1 and 2.

143.    Defendant gave Plaintiff a third handwritten letter.  A copy of this handwritten letter

is attached and marked Plaintiff's Exhibit 3.

144.    A transcription of the letter by Defendant, Louis P. Bucky reads (Exhibit 3):

> 4 questions/reminders.  1). You are always part of my O.R.  Whether you are
> there or not.  Or have permission?  Or not.  Welcome back anytime.  Because
> we built this w J Lo.  2) How could you not comment on the multiple photos
> taken at our table near Zama?  3) You are invited to our rooftop holiday party
> December 10th (the night before your brother's wedding).   The entire
> Tuttleman/Vincera Centers are invited.  120 people – Not a Lou to Jane Doe
> invitation if you need permission you will love it and I picked the venue with
> you in mind.  4) The diamond earrings are now more than a reminder about
> the beautiful.  Brilliant mind between your ears (temporarily lost and
> misguided).  They are representative of us.  Beautiful, balanced and even
> more gorgeous when worn together.   Selected naturally out of love.
> Unfortunately rarely worn, hidden and kept secret until Jane Doe finds the
> true strength and confidence to be honest and deserving of them and more.

**BUCKY BODY CENTER**                    #2

4 questions / reminders

1) You are always part of
my O.R. whether you
are there or not.
Or have permission? or not.
Welcome back anytime.
because we built this
♥ J Lo.

2) How could you not comment
on the multiple photos
taken at "our" table near
Zama?

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

4) The diamond earrings
are now more than a
reminder about the beautiful
brilliant mind between your
ears (temporarily lost & misguided)
The are representative of
US. Beautiful, balanced &
even ∞ more gorgeous when
worn together, Selected naturally
out of love, Unfortunately
rarely worn, hidden and
kept a secret until

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

3) You are invited to
our rooftop holiday
party Dec 10th, (the night
before your brother's wedding)
The entire Tuttleman / Viscera
Centers are invited.
120 people — ∴ not a
Lou to Laura invitation if
you need permission. You will
love it and I picked the
venue w̄ you in mind

@buckybodycenter | www.buckybodycenter.com

---

**BUCKY BODY CENTER**

LAURA finds the
true strength +
confidence to be honest
and deserving of them
and more.

@buckybodycenter | www.buckybodycenter.com

---

145.    Defendant gave Plaintiff another handwritten letter in his nonstop, continuous campaign of manipulation and coercion. <u>A copy of this letter is attached and marked Plaintiff's Exhibit 4.</u>

Laura-

I need to write this because I do not want days to pass and me be misunderstood or diminished

I am very sorry and embarrassed for texting, pestering and pushing you while you were with your family.

- I think that I really didn't listen to you when you repeatedly told me that you did not want to compromise your family or your relationships with Chuck.
  - a) I don't think I believed you I am older, perhaps more complicated, and realized that life is short and you deserve so very much! Perhaps what I think that is, and what you think that is — are different.
  - for the last 6 months I have been at your side almost daily, listening to an individual that I care about describing a very selfish, unsupportive irresponsible partner. I kept my mouth shut and actually have been supportive of Chuck. I too, believe that family

and commitments come first. However, there is a balance.

Over this time, I began to care for you very much. Why now? I can't really answer that.

However, there is obviously some loneliness in my crazy village filled life. I met someone who superficially understands me, does an amazing job taking care of me, helps bring out the best in me professionally, and most importantly brings out so much good in me personally. I got a sense that I did that for you, too. Where that goes can be a very scary journey. However, I believed that I could take care of you and me. This delusion was based on laughter, concern, comfort, and a refreshing attraction that we both shared.

Nevertheless, it led me to disrespect the messages that you were telling me. I didn't believe it, and didn't want to believe it because I knew that we had something

very nice developing. When you were less inhibited your feelings for me were quite clear, but I understand that I may not be comfortable for you. Suffice it to say, our relationship was and is very important to me and I was willing to take a chance slowly and carefully.

Somehow, that got interpreted as a "lose-lose". I looked at it as a "win-win".

Regardless, I won't change your mind and I am sorry for my pestering pressure. I do My heart does not completely understand, but my head will take over going forward.

Please know the following-
I appreciate you
I respect you
I think that you deserve soo much love and care. One day you will see this instead of viewing youself as simple, or undeserving.

- life is short and goes by quickly
  - no fast moves, but never turn away from a life that can be fulfilling and wonderous. That is ~~a~~ just Because it might be stressful. We adapt to stress.

If life at home improves, I am happy for you.

But please know that our friendship has been growing the right way for all the right reasons.

2 people who understand and support each other equally in a world that may not always be fair. is special and should not be diminished.

I like Laura Diplacido for many reasons that she doesn't understand or trust. I won't list them anymore.

More importantly, I did not listen to you when you were asking for space. I am sorry.

When you read this, I will be away. Think carefully - know that I will always be there for you, and I will do my best to listen to my quiet friend.

The day that you can look at me and talk to me is the day that I know what you are truly feeling. Until then friends it is.

Please forgive me,

Lou

146.   A transcription of this letter by Defendant reads (Exhibit 4):

Jane Doe – I need to write this because I do not want days to pass and me be misunderstood or diminished.  I am older, perhaps more complicated, and realized that life is short and you deserve so very much!  Perhaps what I think that is, and what you think that is – are different.  - For the last 6 months I

have been at your side almost daily, listening to an individual that I care about describing a very selfish unsupportive irresponsible partner. I kept my mouth shut and actually have been supportive of Chuck. I too, believe that family and commitments come first. However, there is a balance. Over this time I began to care for you very much. Why now? I can't really answer that. However, there is obviously some loneliness in my crazy village filled life. I met someone who superficially understands me, does an amazing job taking care of me, helps bring out the best in me professionally, and most importantly brings out so much good in me personally. I got a sense that I did that for you too. Where that goes can be a very scary journey. However, I believed that I could take care of you and me. This delusion was based on laughter, concern, comfort, and refreshing attraction that we both shared. Nevertheless, it led to me to disrespect the messages that you were telling me. I didn't believe it, and didn't want to believe it because I know that we had something very nice developing. When you were less inhibited your feelings for me were quite clear, but I understand that may not be comfortable for you. Suffice it to say, our relationship was and is very important to me and I was willing to take a chance slowly and carefully. Somehow, that got interpreted as "lose-lose." I looked at it like a "win-win." Regardless, I won't change your mind and I am sorry for my pestering pressure. My heart does not completely understand, but my head will take over going forward. Please know the following – I appreciate you. I respect you. I think that you deserve soo much love and care. Some day you will see this instead of viewing yourself as simple, or underserving. Life is short and goes by quickly. No fast moves, but never turn away from a life that can be fulfilling and wonderous just because it might be stressful. We adapt to stress. If life at home improves, I am happy for you. But please know that our friendship has been growing the right way for all the right reasons. 2 people who understand and support each other equally in a world that may not always be fair is special and should not be diminished. I like JANE DOE for many reasons that she doesn't understand or trust. I won't list them anymore. More importantly, I did not listen to you when you were asking for space. I am sorry. When you read this, I will be away. Think carefully – know that I will always be there for you and I will do my best to listen to my quiet friend. The day that you can look at me and talk to me is the day that I know what you are truly feeling. Until then <u>friends it is</u>. Please forgive me.
Lou.

147.    Defendant, Louis P. Bucky is liable in his individual capacity for aiding and abetting the severe sexual harassment and sexual misconduct to which Defendant, Louis P. Bucky subjected Plaintiff.

148.    Defendant, Louis P. Bucky was physically aggressive, and he used physical force against JANE DOE on multiple occasions in his attempts to force JANE DOE to engage in sexual acts.

149.    Defendant, Louis P. Bucky's attempted to forcefully compel Plaintiff to engage in sexual acts with Defendant, Louis P. Bucky.

150.    Defendant refused to stop the sexual harassment long after JANE DOE stated unequivocally that she was not interested.

151.    Louis Bucky's letters also confirm that he refused to take "no" from JANE DOE for an answer.

152.    Defendant, Louis P. Bucky himself characterized as "pestering" and "annoying" and "pressuring" and "pushing." See Plaintiff's Exhibit 4.

153.    Defendant characterized his own sexual harassment as "pestering prezssure." Exhibit 4.

154.    In a handwritten letter drafted and signed by Defendant and given to Plaintiff, Defendant, Louis P. Bucky wrote:

  "I am very sorry and embarrassed for texting, pestering and pushing you while you were with your family."

  A copy of this letter is attached and marked Plaintiff's Exhibit 4.

155.    Accordingly, Defendant expressed his own unwillingness to stop the abuse of his employee.

156.    In a handwritten letter drafted and signed by Defendant, Louis P. Bucky and given

to  Plaintiff, JANE DOE, Defendant, Louis P. Bucky wrote:

> "I think that I really didn't listen to you when you repeatedly told me that you
> did not want to compromise your family or your relationship with Chuck."
> Exhibit 4.

157.    Defendant, Louis P. Bucky drafted and signed a handwritten letter that was given

to Plaintiff, JANE DOE where Defendant, Louis P. Bucky attempted to excuse his harassing

conduct by writing:

> "However, there is obviously some loneliness in my crazy village filled life."
> Exhibit 4.

158.    Defendant, Louis P. Bucky described himself as "delusional" in referring to his

own behavior.

159.    This statement was drafted and signed by Defendant, Louis P. Bucky.

> "However, I believed that I could take care of you and me.  This delusion was
> based on laughter, concern, comfort, and refreshing attraction that we both
> shared."  Exhibit 4.

160.    Defendant, Louis P. Bucky admitted that he refused to take no" for an answer which

led Defendant to disrespect Plaintiff JANE DOE

161.    This statement was drafted and signed by Defendant, Louis P. Bucky.

> "Nevertheless, it led to me to disrespect the messages that you were telling
> me.  I didn't believe it, and didn't want to believe it because I know that we
> had something very nice developing." Exhibit 4.

162.    Defendant, Louis P. Bucky described his own conduct toward Plaintiff, JANE

DOE, in a statement was drafted and signed by Defendant, Louis P. Bucky.

> "Regardless, I won't change your mind and I am sorry for my pestering
> pressure." Exhibit 4.

163.    Defendant, Louis P. Bucky attempted to apologize for the harassment in a handwritten statement drafted and signed by Defendant, Louis P. Bucky.

> "I like JANE DOE for many reasons that she doesn't understand or trust.  I won't list them anymore.  More importantly, I did not listen to you when you were asking for space.  I am sorry." Exhibit 4.

164.    Defendant, Louis P. Bucky continued to subject Plaintiff, JANE DOE to sexual harassment, manipulation and abusive conduct and comments of an unwelcome nature that significantly interfered with the terms and conditions of Plaintiff's employment.

165.    Defendant, Louis P. Bucky subjected Plaintiff to unwelcome, physically touching, of a sexual nature, on multiple occasions, that constitutes sexual assault.

166.    Defendant, Louis P. Bucky subjected Plaintiff to quid pro quo sexual advances by attempting to trade sexual acts for professional advancement.

167.    Defendant, Louis P. Bucky attempted to pay for a sexual relationship with Plaintiff, by offering economic security and other items of monetary value.

168.    Some but not all of these offers to trade things of value were described in writing by Defendant in documents signed by Defendant, Louis P. Bucky.   Defendant, Louis P. Bucky wrote:

> "A difficult journey no doubt, but we had each other.  Helping others together by day, helping each other by night.  Anything for you, your family, your economics, your sense of self and of course your ears surrounding those beautiful blue eyes. Exhibit 2.

169.    Defendant, Louis P. Bucky continued to subject Plaintiff to sexual harassment, coercion and manipulation.

170.   Plaintiff, JANE DOE continued her employment for Defendant, Louis P. Bucky and throughout that entire time period, Defendant, Louis P. Bucky continued the illegal conduct, nonstop harassment, and abuse.

171.   Defendant, Louis P. Bucky credited Plaintiff, JANE DOE, with helping Defendant, Louis P. Bucky build his entire business.

172.   When Plaintiff, JANE DOE refused to be an employee by day and a sex partner at night, Defendant, Louis P. Bucky refused to work with Plaintiff.

173.   Plaintiff was no longer permitted to work for Bucky because she would not agree to the sex-based arrangement described in detail by Louis Bucky both in writing and verbally.

174.   Defendant, Louis P. Bucky continued to offer money and other valuables in his attempts to finalize the arrangement he continued to present to JANE DOE – employee by day, sex partner by night.

175.   No other employee had the authority to stop Defendant, Louis P. Bucky's illegal sexual misconduct.

176.   Accordingly, Plaintiff, JANE DOE continued her attempts to ameliorate the sexual harassment by refusing Defendant, Louis P. Bucky's sexual advances and reporting to Defendant, Louis P. Bucky that his behavior had to stop.

177.   Defendant, Louis P. Bucky responded to Plaintiff, JANE DOE's reports of sexual harassment in the workplace by admitting that his behavior was not appropriate, and continuing regardless.  This is the very standard upon which punitive damages are necessary.

178.   Defendant, Louis P. Bucky continued to subject Plaintiff, JANE DOE to sexual harassment despite the many reports of sexual harassment in the workplace.

179.     Defendant, Louis P. Bucky responded to Plaintiff's reports of sexual harassment by continuing the quid pro quo offers and by trying even harder to persuade Plaintiff, JANE DOE to agree with the employer-employee relationship of employee by day, sex partner by night.

180.     Defendant, Louis P. Bucky did this in writing through handwritten statements signed by Louis P. Bucky, where Defendant, Louis P. Bucky described the employee by day, sex partner by night arrangement.

181.     Defendant, Louis P. Bucky offered Plaintiff, JANE DOE gifts including but not limited to diamond earrings in his attempts to persuade Plaintiff, JANE DOE to engage in the employee by day, sex partner by night arrangement.

182.     Sometime around June 29, 2021, Defendant, Louis P. Bucky visited a restaurant in order to confront JANE DOE.

183.     The restaurant in Center City Philadelphia was Talula's Garden.

184.     Plaintiff, JANE DOE, was with two coworkers and Louis P. Bucky arrived and subjected Plaintiff to hostile and abusive conduct of a sexual nature.

185.     While in attendance at the restaurant, Plaintiff, JANE DOE visited the restroom.

186.     The restrooms at Talula's Garden are coed, where individuals can stand outside the stalls, and wash their hands, and both men and women can use the adjacent stalls.

187.     While Plaintiff, JANE DOE was about to wash her hands, Defendant, Louis P. Bucky grabbed Plaintiff, JANE DOE from behind and dragged Plaintiff, JANE DOE into one of the stalls.

188.     Plaintiff, JANE DOE was overpowered and forced into one of the bathroom stalls.

189.     After dragging her into one of the bathroom stalls Plaintiff was subjected to physical force of a sexual nature.

190.     Defendant, Louis P. Bucky pinned Plaintiff, JANE DOE against the wall of the bathroom stall and began shoving his togue into the mouth of Plaintiff, JANE DOE.

191.     Plaintiff, JANE DOE resisted and fought her way out of the bathroom stall.

192.     JANE DOE has not returned to Talula's Garden since.

193.     After the attack at Talula's Garden, the sexual harassment continued and got worse.

194.     The sexual propositions continued where Defendant, Louis P. Bucky tried to persuade Plaintiff, JANE DOE to engage in the employee by day, sex by night arrangement.

195.     When Plaintiff, JANE DOE rejected the continued sexual advances, Defendant, Louis P. Bucky made it clear that Plaintiff, JANE DOE's job was at stake.

196.     Upon rejecting the non-stop, continued sexual propositions, Defendant, Louis P. Bucky made comments to Plaintiff including comments that indicated that Louis P. Bucky could not work with Plaintiff unless Plaintiff agreed to the sexual relationship.

197.     Defendant, Louis P. Bucky held staff meetings at Barclay Prime, a prominent upper-class restaurant that serves steak dinners at rates of more than $200.00 per plate.

198.     Some of the "staff meetings" began at 3:00 P.M., and continued until 10:30 P.M.

199.     During these "staff meetings" Defendant, Louis P. Bucky encouraged staff including Plaintiff, JANE DOE to engage in excessive drinking of alcoholic beverages.

200.     During a so-called staff meeting held by Defendant, Louis P. Bucky at Barclay Prime in Philadelphia, Pennsylvania, Defendant, Louis P. Bucky followed Plaintiff, JANE DOE to the restroom.

201.     Defendant, Louis P. Bucky followed Plaintiff, JANE DOE while Plaintiff, JANE DOE went to use the restroom.

202.    While at the restroom, Defendant, Louis P. Bucky cornered Plaintiff, JANE DOE, and subjected JANE DOE to unwelcome, aggressive, physical touching.

203.    Defendant, Louis P. Bucky subjected JANE DOE to unwelcome, aggressive touching of a sexual nature.

204.    Plaintiff, JANE DOE once again opposed the sexual harassment and solicitation.

205.    Defendant, Louis P. Bucky cornered Plaintiff, JANE DOE near the restrooms at Barclay Prime in Philadelphia, Pennsylvania, and refused to allow JANE DOE to walk away or free herself from Defendant, Louis P. Bucky's physical control.

206.    Plaintiff, JANE DOE continued to reject Defendant, Louis P. Bucky's nonstop, continuous, sexual advances and sexual propositions and eventually Defendant, Louis P. Bucky began to subject Plaintiff to disciplinary consequences.

207.    Sometime around September to October 2021, Defendant, Louis P. Bucky indicated to Plaintiff's Nurse Manager that Louis P. Bucky could no longer work with Plaintiff.

208.    Sometime around November 2021, Defendant, Louis P. Bucky indicated that Louis P. Bucky did not want to work with Plaintiff, JANE DOE any longer.

209.    Plaintiff was subjected to loss of income by Defendant, Louis P. Bucky as a direct consequence for refusing to engage in the sexual arrangement with Louis P. Bucky.

210.    Defendant, Louis P. Bucky repeatedly confronted Plaintiff, JANE DOE while Plaintiff, JANE DOE was working.

211.    Defendant, Louis P. Bucky continued to subject Plaintiff to sexual harassment and sexual manipulation and abusive conduct and comments into November 2021.

212.    Plaintiff, JANE DOE has experienced severe emotional distress caused by the conduct and comments of Defendant, Louis P. Bucky, and the non-stop sexual harassment, sexual

misconduct, and unwelcome physical sexual touching to which JANE DOE was subjected by Defendant, Louis P. Bucky.

213.   Plaintiff, JANE DOE, has sought medical treatment due to the symptoms of the abuse to which Defendant, Louis P. Bucky has subjected Plaintiff, JANE DOE.

214.   Plaintiff, JANE DOE has suffered personal injury due to the unlawful sexual harassment by Defendant, Louis P. Bucky.

215.   Defendant Louis P. Bucky has lured Plaintiff, JANE DOE across state lines in Defendant, Louis P. Bucky's attempts to solicit sex from Plaintiff, JANE DOE.

216.   Accordingly, Defendant, Louis P. Bucky has violated Title VII of the Civil Rights Act of 1964, the Philadelphia Fair Practices Ordinance, as well as multiple Commonwealth causes of action including assault, battery, and intentional infliction of emotional distress.

217.   Defendant, Louis P. Bucky has also violated  Pennsylvania's sex trafficking laws codified as 18 Pa. C.S.A. §§ 3012(b), as well as the Federal Trafficking Victims Protection Act (TVPA) codified as 18 U.S.C.A. §§ 1591, 1595.

218.   Defendant, Louis P. Bucky is liable to Plaintiff, JANE DOE for assault and battery, and intentional infliction of emotional distress.

219.   Defendant, Louis P. Bucky's illegal conduct is depicted in detail in the many handwritten letters drafted and signed by Defendant, Louis P. Bucky.

220.   These handwritten letters drafted by Defendant, Louis P. Bucky includes another letter that was drafted on Louis P. Bucky stationary by Louis P. Bucky and given to Plaintiff, JANE DOE.  This letter reads:

> "I owe you 9,000 more.  I had written you checks for 15,000.  I will always keep my word (we made a vow when you told me that you were leaving).  I will always be accountable for the things that I say and do to the last of my

ability. The money was to help you and support you.  Use it how you wish. You should have 6,000. "No strings attached."  Don't sell the earrings, it would make me sad.  There was a time that you loved and appreciated me. Remembering and feeling those days is the first step toward true honest and accountability."

A copy of this letter is attached as Plaintiff's Exhibit 5.

LOUIS P. BUCKY, M.D.

I owe you 9,000 more.
I had written you checks for 15,000.
I will always keep my word, (we
made a Vow when you told me that
you were leaving)
I will always be Accountable for the
things that I say + do to the best
of my ability.        over


The money was to help you + support
you. Use it how you wish. (you should
have 6,000. "No strings attached"

Don't sell the earrings, it would
make me sad. There was a time
that you loved + appreciated me.
Remembering + feeling those days is
the first step toward true honesty
+ accountability.

221.     Defendant, Louis P. Bucky wrote another note and gave it to Plaintiff, JANE DOE.

This note reads:

> "Use your happy light.  I will not bother you anymore.  Return to or when
> you are ready to laugh, tease, be teased and be excellent.  Read old letter."

<u>A copy of this letter is attached as Plaintiff's Exhibit 6.</u>

222.     Defendants unlawfully terminated Plaintiff's employment due to Plaintiff's sex
and gender and in retaliation for Plaintiff's reports of discrimination and harassment in the
workplace.

223.     Defendants' stated reason for Plaintiff's termination was pretext.

224.     Plaintiff's employment for Defendants ended because Plaintiff would not engage
in an employee by day, sex partner by night arrangement with Defendant, Louis P. Bucky.

225.     Plaintiff refused to engage in the sexual propositions of Defendant, Louis P.
Bucky and Plaintiff's employment with Defendant, Louis P. Bucky ended as a result.

226.    This is retaliation as a result of Plaintiff's opposition to sexual harassment.

227.    As a result of Defendants' conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

228.    As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

229.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer a loss of income, loss of salary, bonuses, benefits and other compensation which such employment entails.

230.    Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

231.    Plaintiff has further experienced severe emotional and physical distress.

232.    As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

233.    Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

234.    Defendants at all times refused to investigate or take appropriate remedial action in response to Plaintiff's complaints of discrimination, harassment and hostile work environment.

235.    Defendants discriminatory conduct was severe and pervasive, created a hostile work environment for Plaintiff.

236.    The above are just some examples of some of the discrimination and retaliation to which Defendants subjected Plaintiff.

237. Plaintiff claims a practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

238. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

239. Plaintiff reported that she sexual harassed multiple times during the summer that preceded the final months of Plaintiff's employment with Defendant.

240. There was nobody who Plaintiff could go to in order to report the sexual harassment of Dr. Louis Bucky because Dr. Bucky was the highest-ranking person in the organization for whom Plaintiff worked.

241. There was no human resources department.

242. There was no employee handbook with instructions on how to report sexual harassment.

243. So, Plaintiff did everything she could to tell Dr. Bucky that she was not interested in a sexual relationship and that she would like Dr. Bucky to stop the sexual harassment and the constant intimidation.

244. Plaintiff spoke to Dr. Bucky at least twenty times during her attempts to make it clear to Dr. Bucky that she wanted the sexual harassment to stop.

245. Plaintiff said to Dr. Bucky "stop."

246. Plaintiff said to Dr. Bucky, you are harassing me and it is causing problems in my personal life including my relationship with my husband."

247. Plaintiff asked Dr. Bucky to "stop" nicely.

248. Plaintiff asked Dr. Bucky to "stop" forcefully.

249. Plaintiff begged Dr. Bucky to "stop" desperately.

250.     And it did not matter to Dr. Bucky what Plaintiff said to oppose the sexual harassment, Dr. Bucky refused to stop.

251.     As a result of Plaintiff engaging in protected activity so many times in the months that preceded her termination, Dr. Bucky told Plaintiff that he could not work with Plaintiff any longer.

**COUNT I**
**DISCRIMINATION UNDER TITLE VII**
<u>**HOSTILE WORK ENVIRONMENT AND DISPARATE TREATMENT**</u>
**(against corporate Defendants only)**

252.     Plaintiff, JANE DOE, hereby incorporates all allegations contained in the preceding  paragraphs as fully as if they were set forth at length.

253.     This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*, as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race, color, and/or national origin.

254.     SEC. 2000e-2 *[Section 703]* states as follows:
  (a)  Employer practices
  It shall be an unlawful employment practice for an employer –
  (1)  to fail or refuse to hire or to discharge an individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
  (2)  to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

255.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et. seq.*, by discriminating against Plaintiff because of her sex and gender.

256.    Plaintiff, JANE DOE was subjected to sexual harassment which was severe and pervasive.

257.    Plaintiff claims that she was subjected to a hostile work environment based upon the severe and pervasive discrimination and harassment in the workplace.

258.    Plaintiff was also terminated from her employment based upon Plaintiff's sex and gender.  Accordingly, Plaintiff presents a claim of disparate treatment in connection with the termination.

259.    Plaintiff also claims quid pro quo sexual harassment pursuant to Title VII of the Civil Rights Act of 1964, as Defendant, Louis Bucky repeatedly solicited Plaintiff for sex by attempting to trade something of value if Plaintiff agreed to engage in sexual acts.

260.    Defendants also threatened to take things away from Plaintiff if she did not agree to the sexual solicitation.

261.    Defendants engaged in several acts of discrimination and harassment that were so severe that a single act was sufficient to create a hostile work.   This includes the acts of physical violence when Plaintiff was subjected to aggressive physical conduct of a sexual nature by Louis Bucky.

262.    A supervisor does not have to subject an employee to multiple sexual assaults in order to subject an employee to a hostile work environment.  One sexual assault is sufficient.

263.    Defendants also engaged in ongoing, continuous, daily abuse which was so pervasive as to create a hostile work environment.  This includes the nonstop conduct and

comments from Louis Bucky and the stalking which occurred throughout the entire summer that proceeded the final months of her employment.

264.    The letters written by Dr. Bucky document Plaintiff's attempted to stop the sexual harassment and Dr. Bucky's refusal to consider Plaintiff's many attempted to separate herself from the ongoing, nonstop, abuse.  Plaintiff files these letters to document both the sexual harassment and the protected activity and retaliation.

## COUNT II
## RETALIATION UNDER TITLE VII
### (against corporate Defendants only)

265.    Plaintiff, JANE DOE, hereby incorporates all allegations contained in the preceding  paragraphs as fully as if they were set forth at length.

266.    Title VII of the Civil Rights Act of 1962, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a civil, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter."

267.    Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et. seq.* by retaliating against Plaintiff with respect to the terms, conditions, and/or privileges of his employment because of her opposition to and reporting of the unlawful employment practices of Defendants.

268.    Plaintiff continued to engage in protected activity by opposing the severe and pervasive sexual harassment in the workplace.

269.    Defendants refused to investigate Plaintiff's reports of discrimination and harassment in the workplace.

270.     Defendants refused to initiate prompt corrective actions.

271.     Accordingly, Defendants permitted, sanctioned, condoned, and allowed the discrimination and harassment to continue.

272.     Plaintiff JANE DOE repeatedly opposed the discriminatory conduct which was the ongoing sexual harassment.

273.     The letters included in this civil action complaint expressly reference Plaintiff's opposing to the sexual harassment which is protected activity.

274.     The letters included in this civil action also expressly reference Defendants refusal to consider Plaintiff's protected activities and an intend to continue the sexual harassment no matter what Plaintiff said or how intensely she protested.

275.     Any corrective action taken by Defendants was not enforced and Plaintiff was subjected to a campaign of severe and pervasive retaliation which also created a hostile work environment.

### COUNT III
### DISCRIMINATION UNDER
### PHILADELPHIA CITY ADMINISTRATIVE ORINANCE
### (against corporate Defendants only)

276.     Plaintiff, JANE DOE here by incorporated all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

277.     The Philadelphia Fair Practices Ordinance § 9-1103(1) provides that "It shall be an unlawful discriminatory practice: "It shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including but

not limited to, the following: (a) For any employer to refuse to hire, discharge, or otherwise

discriminate against any individual, with respect to tenure, promotions, terms, conditions, or

privileges of employment or with respect to any matter directly or indirectly related to

employment."

278.    Defendants engaged in an unlawful discriminatory practice in violation of

Philadelphia Fair Practices Ordinance § 9-1103(1) by creating and maintaining discriminatory

working conditions, and otherwise discriminating against Plaintiff because of Plaintiff's sex and

gender.

279.    Plaintiff hereby makes a claim against Defendants under all of the applicable

paragraphs of Philadelphia Fair Practices Ordinance Chapter 9-1100.

280.    The Equal Employment Opportunity Commission ("EEOC") maintains a work

sharing agreement with the Philadelphia Commission on Human Relations.  This Work Sharing

Agreement has been described by the EEOC in emails sent from the EEOC to Plaintiff's counsel:

> "As you are aware EEOC works in partnership with Fair Employment Practice Agencies
> (FEPAs) to manage charges of employment discrimination. The Philadelphia District
> Office has a work-sharing agreement with the Philadelphia Commission on Human
> Relations (PCHR).  This work-sharing agreement allows for charges to be dual-filed with
> both agencies."

281.    The Philadelphia Commission on Human Relations ("PCHR") publicly promotes

its work sharing agreement with the Equal Employment Opportunity Commission ("EEOC") by

notifying the public that Charges filed at one agency will be accepted as being dual filed with

both agencies.

282.    This assurance is made to the public in documents including the

PHILADELPHIA COMMISSION ON HUMAN RELATIONS REVISED FISCAL YEAR 2021

BUDGET TESTIMONY.  This document reads, inter alia,

"The PCHR has a Work-Sharing Agreement with the federal Equal Employment Opportunity Commission (EEOC) that aligns with the Federal Fiscal Year (FFY)1. Under the contract, the PCHR, as a Fair Employment Practices Agency (FEPA), receives dual-filed discrimination cases, which it investigates and closes. In FY19, the PCHR closed 120 cases generating $98,700 from the EEOC for its case closings and outreach activities. The PCHR's contract for federal FY20 is 130 cases. Based on mid-fiscal year projections, the PCHR will exceed that amount and request an upward modification of its contract."

283.     The Work Sharing Agreement between the EEOC and the Philadelphia Commission on Human Relations permits charges filed at one agency to be dual filed with both agencies.

284.     Based on this Work Sharing Agreement, Plaintiff, JANE DOE requested that the Charge of Discrimination she filed be dual filed with the Philadelphia Commission on Human Relations.

285.     When she filed her Charge cover sheet, Plaintiff, JANE DOE expressly stated that her Charge of Discrimination was to be dual filed with the Philadelphia Commission on Human Relations.

286.     To be certain that the Charge was dual filed with the Philadelphia Commission on Human Relations, JANE DOE expressly listed the Philadelphia Commission on Human Relations on the Charge Cover sheet and no other agency.

287.     Plaintiff, JANE DOE also used bold and underlined fonts in her Statement of Material Facts, to notify the EEOC that she was requesting that the Charge of Discrimination be dual filed with the Philadelphia Commission on Human Relations.

288.     Plaintiff, JANE DOE's Charge of Discrimination was indeed dual filed with the Philadelphia Commission on Human Relations.

289.     Plaintiff, JANE DOE therefore presents claims pursuant to the Philadelphia Fair Practices Ordinance for disparate treatment, quid pro quo sexual harassment, hostile work environment, and retaliation.

**COUNT IV**
**RETALIATION UNDER**
**PHILADELPHIA CITY ADMINISTRATIVE ORINANCE**
**(against all named Defendants)**

290.     Plaintiff, JANE DOE here by incorporated all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

291.     The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that it shall be unlawful discriminatory practice: "For any person to harass, threaten, harm, damage, or otherwise penalize, retaliate or discriminate in any manner against any person because he, she or it has complied with the provisions of this Chapter, exercised his, her or its rights under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder."

292.     Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(g) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

293.     Plaintiff engaged in protected activity by opposing and reporting the sexual harassment and the sexual advances.

294.     The sexual harassment continued and got worse as a result of her reports.

295.     Moreover, Plaintiff's employment ended as a result of her reports.

**COUNT V**
**DISCRIMINATION UNDER**
**PHILADELPHIA CITY ADMINISTRATIVE ORINANCE**
**(against individual Defendants including Dr. Louis Bucky)**

296.     Plaintiff, JANE DOE here by incorporated all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

297.     The Philadelphia Fair Practices Ordinance § 9-1103(1)(h) provided that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

298.     Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful, and retaliatory conduct.

**COUNT VI**
**ASSAULT AND BATTERY**
**(Individually against Defendants)**

299.     Plaintiff, JANE DOE here by incorporated all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

300.     "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." Cohen v. Lit Brothers, 166 Pa.Super. 206, 209, 70 A.2d 419, 421 (1950).

301.     Under Pennsylvania law, the tort of "assault may be described as an act intended to put another person in reasonable apprehension of an immediate battery, and which succeeds in causing an apprehension of such battery." Cucinotti v. Ortmann, 159 A.2d 216, 217 (Pa. 1960) (emphasis in original); accord Sides v.  Cleland, 648 A.2d 793, 796 (Pa. Super. Ct. 1994), appeal denied, 656 A.2d 119 (Pa. 1995) (citing Restatement (Second) of Torts § 21 (1965)).

302.     Under Pennsylvania law the "tort of battery has been described as an unconsented touching that is either harmful or offensive." Cooper ex rel. Cooper v. Lankenau Hosp., 51 A.3d 183, 191 (Pa. 2012) (citing C.C.H. ex rel. T.G. v. Philadelphia Phillies, Inc., 940 A.2d 336, 340 n.4 (Pa. 2008)) (defining a battery as "'a harmful or offensive contact with the person of another'") (quoting Dalrymple v. Brown, 701 A.2d 164, 170 (Pa. 1997)). In other words, "[a]ssault is an intentional attempt by force to do any injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994) (citation and internal quotation marks omitted).

303.     Defendant assaulted Plaintiff, JANE DOE herein by threatening Plaintiff, JANE DOE in a sexually inappropriate and unwelcome manner with imminent force.

304.     Plaintiff made it clear that she would not consent to the physical, sexual contact, and that the above contact was violent and offensive.

305.     Defendant, Dr. Louis Bucky ignored Plaintiff, JANE DOE's protestations and dragged Plaintiff into the stall of a bathroom in a restaurant in Philadelphia, as described more fully above.

306.   Defendant, Dr. Louis Bucky physically assaulted Plaintiff, JANE DOE by subjecting Plaintiff to unwelcome physical contact of a sexual nature, while trying to verbally persuade Plaintiff, JANE DOE to engage in a sexual relationship.

307.   Defendant put his hands around Plaintiff's neck.

308.   Defendant used physical force to stop Plaintiff from leaving the immediate area where Defendant tried to force Plaintiff to begin sexual conduct.

309.   Defendant subjected Plaintiff to unwelcome kissing while Plaintiff tried to pull away.

310.   As a direct and proximate result of these malicious and conscious wrongful actions, Plaintiff has sustained physical injuries, humiliation as well as severe mental and emotional distress from the indignity to which she was subjected, which resulted in bodily injury, and damages, including punitive damages, to be determined at trial.

### COUNT VII
### <u>FALSE IMPRISONMENT</u>
### (Individually against Defendants)

311.   Plaintiff, JANE DOE here by incorporated all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

312.   False imprisonment" in Pennsylvania means the unlawful restraint of another person that substantially interferes with that person's liberty or freedom.

313.   The elements of false imprisonment include knowingly restraining another so as to interfere substantially with his or her liberty.

314.   Plaintiff JANE DOE was falsely imprisoned by Defendant multiple times when Defendants refused to permit Plaintiff to leave during the sexual assault and battery.

315.    Plaintiff had to fight to get away while Defendant restrained her and would not permit her freedom of movement.

316.    As a direct and proximate result of these malicious and conscious wrongful actions, Plaintiff has sustained physical injuries, humiliation as well as severe mental and emotional distress from the indignity to which she was subjected, which resulted in bodily injury, and damages, including punitive damages, to be determined at trial.


### COUNT VIII
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ("IIED")
### INDIVIDUAL AND VICARIOUS LIABILITY

317.    Plaintiff, JANE DOE here by incorporated all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

318.    Plaintiff brings claims against all Defendants for intentional infliction of emotional distress ("IIED") and hold each vicariously liable for the acts of the others.

319.    To prove a claim of IIED, the following elements must be established: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; and (4) that distress must be severe. Hooten v. Penna. College of Optometry, 601 F.Supp. 1155 (E.D.Pa.1984); Hoy v. Angelone, 691 A.2d 476, 482 (Pa.Super. 1997); Restatement (Second) of Torts § 46.

320.    During Plaintiffs' employment, Defendants intentionally and recklessly harassed and inflicted emotional injury on Plaintiff by subjecting her to outrageous treatment beyond all bounds of decency.

321.    Defendants verbally, mentally and physically abused Plaintiff and treated her in a demeaning and inferior manner, which no reasonable person could be expected to endure.

322.    Plaintiff, JANE DOE repeatedly asked Defendants and specially Dr. Louis Bucky to stop the unwelcome sexual conduct and comments.

323.    Plaintiff, JANE DOE's multiple requests to Dr. Louis Bucky are recorded by Louis Bucky in his own words in written letters given to JANE DOE.

324.    Dr. Bucky recorded that JANE DOE asked Dr. Bucky to stop the unwelcome sexual harassment.

325.    Dr. Bucky recorded that he would not stop the unwelcome sexual harassment.

326.    Thereafter, Dr. Bucky continued to stalk JANE DOE by showing up at places where he knew JANE DOE might be and subjecting JANE DOE to unwelcome physical contact of a sexual nature.

327.    Dr. Louis Bucky also continued to call and text JANE DOE while JANE DOE was with her family.

328.    Dr. Louis Bucky also writes about this stalking conduct in his handwritten letters to JANE DOE.

329.    As a direct and proximate result of these malicious and conscious wrongful actions, Plaintiff has sustained severe emotional distress, resulting in bodily injury, and damages, including punitive damages, to be determined at trial.

**COUNT IX**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ("NIED")**
**(ALTERNATIVE PLEADING)**

330.    Plaintiff, JANE DOE here by incorporated all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

331.    Defendants owed Plaintiff a duty of care to safeguard her mental and physical health and wellbeing; and Defendants' breach of this duty directly and proximately caused

Plaintiff to suffer genuine and substantial emotional distress, which manifested itself in physical illness and serious psychological damage.

332.   Plaintiff, JANE DOE is not the first employee who was subjected by Dr. Bucky to severe sexual harassment in the workplace.

333.   Dr. Louis Bucky subjected other female employees to sexual harassment in the workplace.

334.   Dr. Louis Bucky's prior sexual harassment was also reported  and at least one prior female employee filed a Charge of Discrimination naming Louis Bucky as the primary sexual harasser.

335.   Dr. Louis Bucky paid this prior employee a sum of at least $300,000.00 in response to her claims of sexual harassment.

336.   Dr. Louis Bucky also paid his own counsel a sum of approximately $170,000.00 to defend again prior claims of sexual harassment.

337.   Accordingly, Dr. Bucky and Dr. Bucky's practice was on notice regarding the unwelcome sexual conduct of Louis Bucky.

338.   Louis Bucky responded to prior claims of sexual harassment by continuing to subject female members of his staff to sexual harassment including Plaintiff, JANE DOE.

339.   Plaintiff's injuries were foreseeable because a reasonable person would have known that Defendants' actions would cause a reasonable person substantial emotional distress.

**COUNT X**
**TRAFFICKING VICTIMS PROTECTION ACT (TVPA)**
**18 U.S.C.A. §§ 1591, 1595**
**(Individually against Defendant Louis Bucky)**

340.    Plaintiff, JANE DOE here by incorporated all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

341.    Plaintiff brings this claim pursuant to all applicable sections of 18 U.S.C.A. §§ 1591, 1595 in that "An individual who is a victim of a violation of Section 1589, 1590, or 1591 of title 18, United States Code, may bring a civil action in any appropriate district court of the United States. The court may award actual damages, punitive damages, reasonable attorneys' fees, and other litigation costs reasonably incurred." 18 U.S.C.A. §1595(a).

342.    Defendants knowingly recruited, enticed, harbored, and obtained Plaintiff through means of force, threats of force, and by a combination of such forceful means, and attempted to coerce Plaintiff to engage in an unwanted sexual act for a commercial benefit.

343.    Defendants violated the sections cited hereto and Plaintiff suffered damage as a result.

344.    When the United States Congress passed Section 1591 of the TVPA it did so for the following purposes: "to combat trafficking in persons, especially into the sex trade, slavery, and involuntary servitude, to reauthorize certain Federal programs to prevent violence against women, and for other purposes. "Pub. L. No. 106-386 § 102 , 114 Stat. 1488 (2000) (codified as 18 U.S.C. §1591 ).

345.    The statute defines "sex trafficking" in Section 103 as "the recruitment, harboring, transportation, provision, or obtaining of a person for the purpose of a commercial sex act." Pub.L. No. 106-386 § 103 , 114 Stat. 1488 (2000).

346.    Congress defines "commercial sex act" as "any sex act on account of which anything of value is given to or received by any person." Id.

347.    Congress noted that "trafficking in persons is not limited to the sex industry," and that "traffickers lure women and girls into their networks through false promises of decent working conditions at relatively good pay as nannies, maids, dancers, factoryworkers, restaurant workers, salesclerks, or models." Pub. L. No. 106-386 § 102 , 114 Stat. 1488 (2000).

348.    In 2003, Congress amended and expanded the TVPA for the purpose of "enhancing provisions on prevention of trafficking, protections of victims of trafficking, and prosecution of traffickers." H.R. Rep. No. 108-264(I), at 8 (2003), 2004 U.S.C.C.A.N. 2408, 2408.

349.    In doing so, Congress added a private right of action which provides: An individual who is a victim of a violation of Section 1589, 1590, or 1591 of Title 18, United States Code, may bring a civil action in any appropriate district court of the United States.

350.    The court may award actual damages, punitive damages, reasonable attorneys' fees, and other litigation costs reasonably incurred.

351.    The remedial provision at issue, Section 1595, which permits civil actions for damages under Section 1591, requires broad interpretation. See Peyton v. Rowe, 391 U.S. 54, 65, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968) (recognizing "the canon of construction that remedial statutes should be liberally construed"). Noble v. Weinstein, 335 F. Supp. 3d 504, 515 (S.D.N.Y. 2018).

352.    Section 1595 amended the TVPA for the remedial purpose of "enhancing ... protections of trafficking victims." 18 U.S.C. § 1595, Pub. L. 108-193, Dec. 19, 2003, 117 Stat. 2878, § 4 (effective Dec. 19, 2003); see also N.C. Freed Co., Inc. v. Bd. of Governors of Fed.

Reserve Sys., 473 F.2d 1210, 1214 (2d Cir. 1973) ("Since the statute is remedial in nature, its

terms must be construed in liberal fashion[.]") Noble v. Weinstein, 335 F. Supp. 3d 504, 515

(S.D.N.Y. 2018).

      353.    Broad, expansive language is employed in Sections 1591 and 1595. See 18 U.S.C.

§§ 1591, 1595. Congress's use of the word "whoever" and its repeated use of the word "any"

"does not lend itself to restrictive interpretation." United States v. Jungers, 702 F.3d 1066, 1070

(8th Cir. 2013) ("By its terms, § 1591(a)(1) applies to 'whoever knowingly ... recruits, entices,

harbors, transports, provides, obtains, or maintains [a child] by any means.' These words do not

lend themselves to a restrictive interpretation.") (collecting cases); United States v. Todd, 627

F.3d 329, 336 (9th Cir. 2010) (Smith, M., concurring ) ("[Section 1591] allows for a conviction

even where the defendant did not personally use force, fraud or coercion," so long as he knew

such means would be used.) Noble v. Weinstein, 335 F. Supp. 3d 504, 516 (S.D.N.Y. 2018).

      354.    In denying a Motion to Dismiss similar claims, the Honorable Michael M.

Baylson, in this District, wrote:

> Both laws allow a victim of human trafficking to sue their trafficker, which Doe
> alleges means suing Metz. Under Pennsylvania law, a victim of human
> trafficking can sue someone who harbored or transported them knowing that the
> victim would commit a commercial sex act. 18 Pa. C.S.A. §§ 3001, 3011, 3051.
> The federal law standard is largely the same, as applied to Doe's alleged facts,
> with the added requirement of the perpetrator's actions were "in or affecting
> interstate commerce." 18 U.S.C.A. §§ 1591, 1595. Here, Doe described a sex
> trafficking violation under both laws: Metz allegedly transported her to various
> locations, including out-of-state, to engage in commercial sex acts with her, by
> purportedly treating sex as a condition of her ongoing employment. See Noble
> v. Weinstein, 335 F. Supp. 3d 504, 521 (S.D.N.Y. 2018) (making future job
> "prospect[ s ]" and "continued professional relationship" contingent on sex acts
> constitutes "commercial sex act"). (Case 2:20-cv-04095-MMB Document 16
> Filed 04/21/21 Page 5 of 10).

355.     Defendant, Louis Bucky traveled for his business to the State of Florida across state lines from Philadelphia, Pennsylvania to Miami, Florida.

356.     Defendant informed Plaintiff that she had to accompany him on this trip, telling her prior to leaving that it was a condition of her employment.

357.     Defendant paid for Plaintiff's trip to Miami, knowing that he would use fraud, physical force and/or coercion on Plaintiff in order to engage in sexual acts with Plaintiff.

358.     After they left for Miami, Florida, Defendant, Louis Bucky informed Plaintiff that she did not have to attend any of the plastic surgery events that were scheduled during a plastic surgery conference that occurred in Miami during that time.

359.     Defendant, Louis Bucky admitted that it was not important for Plaintiff to attend any of the so-called "work events" that Dr. Bucky used as the pretext for luring Plaintiff across state lines.

360.     Defendant arranged for Plaintiff to accompany him on this business trip in order to bring Plaintiff to a secluded hotel room, where Plaintiff would be alone with Dr. Bucky, so that Dr. Bucky could engage in commercial sex acts with Plaintiff.

361.     Dr. Bucky used this business conference in any state to manipulate and coerce the Plaintiff into engaging in commercial sex acts.

362.     Defendant made it clear throughout Plaintiff's employment that he wanted to engage in a commercial arrangement with Plaintiff where Plaintiff would provide sex to Defendant.

363.     Defendant wrote about this commercial relationship repeatedly in letters to Plaintiff where Dr. Bucky stated he wanted an employee by day who engaged in sexual acts with him at night.

364.    Defendant subjected Plaintiff to comments and conduct indicating that he wanted to set up an arrangement where Plaintiff would provide medial work during the day and sex during the night.

365.    Defendant subjected Plaintiff to conduct and comments indicating the intent to pay for sex.

366.    Defendant's nickname for Plaintiff was the name of a prostitute in a movie that Defendant referred to.

367.    Defendant brought Plaintiff to Miami with the intention of solidifying the sexual arrangement.

368.    Defendant was well aware that he was significantly wealthier than Plaintiff and Defendant used his wealth in order to entice and recruit Plaintiff into engaging in a sexual arrangement including engaging in sexual intercourse with him.

369.    As a direct and proximate result of these malicious and conscious wrongful actions, Plaintiff has sustained humiliation as well as severe mental and emotional distress from the indignity to which she was subjected, which resulted in bodily injury, and damages, pursuant to 18 Pa C.S.A. § 5747, to be determined at trial.

**COUNT XI**
**SEX TRAFFICKING**
**18 Pa C.S.A. §§ 3012(b)**
**(Individually against Defendant Louis Bucky)**

370.    Plaintiff, JANE DOE here by incorporated all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

371.    Defendant traveled for his business to the State of Florida across state lines from Philadelphia to Miami.

372.    Defendant paid for Plaintiff's trip to Miami, knowing that he would use fraud, physical force and/or coercion on Plaintiff in order to engage in sexual acts with Plaintiff.

373.    Defendant arranged for Plaintiff to accompany him on this business trip in order to bring Plaintiff to a hotel room where Defendant would use manipulation and coercion to subject Plaintiff to sexual acts.

374.    Defendant made it clear throughout Plaintiff's employment that he wanted to engage in a commercial arrangement with Plaintiff where Plaintiff would provide sex to Defendant.

375.    Defendant subjected Plaintiff to comments and conduct indicating that he wanted to set up an arrangement where Plaintiff would provide medial work during the day and sex during the night.

376.    Defendant subjected Plaintiff to conduct and comments indicating the intent to pay for sex.

377.    Defendant's nickname for Plaintiff was the name of a prostitute in a movie that Defendant referred to.

378.    Defendant brought Plaintiff to Miami with the intention of solidifying the sexual arrangement.

379.    Defendant was well aware that he was significantly wealthier than Plaintiff and Defendant used his wealth in order to entice and recruit Plaintiff into engaging in a sexual arrangement including engaging in sexual intercourse with him.

380.    As a direct and proximate result of these malicious and conscious wrongful actions, Plaintiff has sustained humiliation as well as severe mental and emotional distress from

the indignity to which she was subjected, which resulted in bodily injury, and damages, pursuant to 18 Pa C.S.A. § 5747, to be determined at trial.

## COUNT XI
## NEGLIGENCE

381.    Plaintiff, JANE DOE here by incorporated all allegations contained in the preceding paragraphs as fully as if they were set forth at length.

382.    Defendants owed Plaintiff a duty of care to safeguard her mental and physical health and well-being.

383.    Defendants breached their duty of care by negligently, accidentally or recklessly failing to safeguard Plaintiff's mental and physical health and well-being.

384.    Defendants' breach of this duty directly and proximately caused Plaintiff to sustain severe emotional distress, resulting in physical illness and serious psychological damage.

## JURY DEMAND

Plaintiff requests a jury trial on all issued to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, economic losses, compensatory damages, punitive damages, liquidated damages, statutory damages, attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.

**DEREK SMITH LAW GROUP, PLLC**


By:   \_\_/s/ Seth D. Carson_____
        Seth D. Carson, Esquire
        1835 Market Street, Suite 2950
        Philadelphia, Pennsylvania 19103
        Phone: 215.391.4790
        Email: seth@dereksmithlaw.com

DATED: November 13, 2023