IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE : | |
|     Plaintiff : | |
| : | CIVIL ACTION |
| v. : | |
| : | No. 2:23-CV-04059 |
| LOUIS P. BUCKY, M.D., P.C., LOUIS P. BUCKY, : | |
| (individually) and BUCKY BODY CENTER : | |
|     Defendants : | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
AND TO DISALLOW THE PLAINTIFF TO PROCEED PSEUDONONIMOUSLY**

**INTRODUCTION**

In a meandering and somewhat confusing response to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, Plaintiff proffers only broad-based statements that "Defendants have the facts wrong" and "Defendants are wrong on the law" (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, p. 4 of 29)[1]. Even more compelling dismissal of her amended pleading, Plaintiff totally fails to present any argument whatsoever regarding Defendants' motion relating to the dismissal of her common law and statutory claims contained in the First Amended Complaint at Counts IV through XI, and she further fails to set forth any extraordinary factual basis that would give rise to her proceeding pseudonymously.

Simply stated, Plaintiff's claims for sexual harassment and retaliation brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("Title VII") and the

---

[1] The Plaintiff did not number the pages of her responding brief, and therefore, page references to that document are made to the ECF numbering appearing on the top of each page of the filed document

1

Philadelphia Fair Practices Ordinance, 9 Phila. Code §1101 *et seq.* ("PFPO"), her claims pursuant to the common law of the Commonwealth of Pennsylvania, and her frivolously included claims pursuant to state and federal sex trafficking laws that simply do not apply must be dismissed against each of the Defendants.

As general background, at all times applicable to the present allegations and continuing to the present, Laura DiPlacido ("DiPlacido") was a fulltime, well compensated employee of non-party, Penn Medicine, working at the Penn Medicine Tuttleman Surgical Center located at 1840 South Street, Philadelphia, Pennsylvania. As a surgical technologist employed by Penn Medicine and working in accordance with the Pennsylvania Surgical Technologist Regulation, DiPlacido was only responsible to the supervising nurse also directly employed by Penn Medicine, for preparing a selected operating room with sterile instruments, equipment and supplies and aiding the registered surgical nurse in the count of sponges, needles, supplies and instruments at the conclusion of any surgical procedure. Prior to and after the events that are alleged to give rise to Ms. DiPlacido's claims, Plaintiff and Dr. Bucky worked at the same Tuttleman Surgical Center in the capacities described above where Ms. DiPlacido, who, as stated, was employed by and paid by Penn Medicine (and reporting to its surgical nurse, also a fulltime employee paid by Penn Medicine).

In November 2020, during the worldwide, COVID pandemic, Plaintiff began supplementing her income as a parttime independent contractor for Bucky P.C., assisting sporadically with operative procedures performed at the Vincera Surgical Center and assisting at the Bucky Body Center when her fulltime employment permitted. During her tenure with the Defendant Company, Plaintiff completed and signed a Form 1099-Misc Withholding Exemption Certificate certifying that **"personal income tax is not required to be withheld on the**

**payment of employee compensation..."** (Emphasis supplied). *See* the Form REV-1832, signed by Plaintiff acknowledging her status as an independent contractor exempt from withholding that was attached to Defendants' opening brief as Exhibit "A". As a result of her status as an independent contractor, Plaintiff was always paid by Bucky P.C. without tax withholding through her last day of work for Bucky P.C. on September 21, 2021 for her negligible earnings in amounts totaling $1925.00 in 2020 and $7210.00 in 2021, depending on the parttime work she performed at the Vincera Surgical Center or at the Bucky Body Center. She worked as an independent contractor at both facilities only for a total of 65 hours over that 10-month period. *See* Paycheck statements issued by Bucky P.C. to Plaintiff for her intermittent, as needed, part-time services, attached to Defendants' opening brief as Exhibit "B".

## DISCUSSION

**A. The Causes Of Action For Allegedly Creating A Hostile Work Environment, Disparate Treatment, And Retaliation Against Louis P. Bucky P.C. Under Title VII And The PFPO Must Be Dismissed Since Plaintiff Was Not An Employee Of The Company And The First Amended Complaint Does Not Set Forth That Plaintiff Complained To The Company About Discrimination**

   **1. Plaintiff Was Not An Employee As Is Required To State A Claim Under Title VII And The Philadelphia Fair Practices Act**

Title VII of the Civil Rights Act of 1964, as amended, and the Philadelphia Fair Practices Act make it unlawful only for an **employer** to discriminate or retaliate **against its employees**. 42 U.S.C. § 2000e-3(a) (emphasis supplied). Title VII defines an employee as "an individual employed by an employer." *Id.* at Section 2000e(f); *Brown v. J. Kaz, Inc.,* 581 F.3d 175, 179 (3d Cir. 2009). An independent contractor is simply not an employee protected under Title VII or the Philadelphia Fair Practices Ordinance. The Third Circuit has construed the definition of who is an independent contractor to incorporate traditional principles of agency law in determining employment status. *Id.* at 180. The relevant factors used in that determination are: (1) the skill

required; (2) the source of the instrumentalities and tools; (3) the location of the work; (4) the duration of the relationship between the parties; (5) whether the hiring party has the right to assign additional duties to the hired party; (6) the extent of the hired party's discretion over hours of work; (7) the method of payment; (8) the provision of employee benefits; and (9) the tax treatment of the hired party. *Id.* (citing *Nationwide Mutual Ins. Co. v. Darden,* 503 U.S. 318, 323-24 (1992)). *See also Walters v. Metro. Educ. Enters., Inc.,* 519 U.S. 202, 211-12 (1997) (favorably citing *Darden* in a Title VII case).

Here, the undisputable and controlling evidence in the form of documents signed and received by the Plaintiff mandates a finding that Plaintiff was an independent contractor and accordingly **not subject to** Title VII's and the municipal ordinance's protection. More specifically, the tax treatment afforded to her and her completion of the independent contractor tax form eliminating withholding requirements (attached to Defendants' Motion to Dismiss the First Amended Complaint as Exhibits "A" and "B") are the major indicators and most compelling factors in determining her independent contractor status. The actual non-withholding of taxes by the Company throughout Plaintiffs short tenure as an independent contractor, her non-receipt of benefits, her clearly parttime work on an as needed basis, her fulltime employment by Penn Medicine throughout the period she served the Respondent Bucky P.C., and the limited number of hours she worked for the Bucky P.C. (65 total hours over a nearly 10 month time period) clearly cement her status as an independent contractor for whom coverage under Title VII and the Philadelphia Ordinance is barred as a matter of law. In accordance with the dictates of the Third Circuit's opinion in *Brown v. J. Kaz, Inc. supra.* Accordingly, Plaintiff simply was never an "employee" covered under and afforded the protections of Title VII of the Civil Rights Act of 1964, as amended, or the Philadelphia Fair Practices Act.

## 2. Plaintiff Has Not Stated A Claim For Retaliation

Retaliation claims under Title VII (and the Philadelphia Fair Practices Ordinance) are likewise analyzed under the *McDonnell Douglas* burden-shifting framework. *Moore v. City of Philadelphia,* 461 F.3d 331, 342 (3d Cir. 2006). However, unlike Plaintiffs discrimination claims, a retaliation claim is subject to a much more stringent standard. *See University of Texas Southwestern Medical Center v. Nassar,* 570 U.S. 338, 360 (2013). In *Nassar,* the United States Supreme Court announced that a plaintiff asserting a Title VII retaliation claim must prove the retaliation claim "....according to traditional principles of but-for causation, not the lessened causation test [i.e. motivating factor] stated in §2000e-2(m) [which is a more demanding standard]. *Id.* This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* In short, Plaintiff must establish that her "protected activity was the but-for-cause of the alleged adverse action by [Defendant]." *Id* .Instantly, Plaintiff cannot even set forth a *prima facie* retaliation claim, let alone satisfy this heavier standard.

To establish a *prima facie* claim of retaliation, Plaintiff must demonstrate that: (1) she engaged in an activity protected under the anti-discrimination statutes; (2) defendant took adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse employment action. *Burlington, 548* at 59-60; *Weston v. Pennsylvania,* 251 F.3d 420, 430 (3d Cir. 2000). To demonstrate protected activity, Plaintiff must establish that she filed a charge of discrimination with an outside agency or court, made a formal or informal protest of discrimination to the employer or otherwise protested about discriminatory practices to management. *See Mikell v. Marriott International, Inc.,* 789 F. Supp.2d 607, 618 (E.D. Pa. 2011) )("protected activity extends beyond

the formal complaints filed with the EEOC or the PHRC, and can include `informal protests of discriminatory employment practices, [such as] making complaints to management, ... [and] protesting against discrimination by industry or society in general.'")(internal citations omitted). With respect to the required complaint, this Court specifically recognized that in the Third Circuit:

> [A] general complaint of unfair treatment is insufficient to establish protected activity under Title VII" and .. "opposition to an illegal employment practice must identify the employer and the practice — if not specifically, at least by context." [internal citations omitted] "[C]omplaints must be specific enough to notify management of the particular type of discrimination at issue in order to constitute 'protected activity.

*Id.,* at pp. 618-19. *See also Eldridge v. Municipality of Norristown,* 828 F. Supp.2d 746, 763 (E.D. Pa. 2011).

Plaintiff must establish the requisite causal link to satisfy the final element of her retaliation claim. To establish a causal connection, Plaintiff must present circumstances that justify an inference of retaliatory motive. *Jalil v. Avdel Corp.,* 873 F.2d at 701, 709 (3d Cir. 1989). Plaintiff can meet this burden by establishing temporal proximity or by evidence of antagonism after she engaged in protected activity. *Azzaro v. County of Allegheny,* 110 F.3d 968, 973-974(3d Cir. 1997). Here, Plaintiff has not alleged that she complained to anyone about discrimination or harassment except obliquely to the alleged harasser himself. Therefore, she cannot state a claim for retaliation. To the extent she relies on an incident by another female (who was an actually employee) that occurred in June 2016, Plaintiff cannot demonstrate the requisite temporal proximity. *See Johnson v. Souderton Area Sch. Dist.,* Civ. A. No. 95-7171, 1997 WL 1642647019 at *8 (E.D. Pa. April 1, 1997)(a period of 4 and 9 months between protected activity and alleged adverse actions too large to establish causal nexus); *Woods v.*

*Bentsen,* 889 F. Supp. 179, 187 n. 15 (E.D. Pa. 1995). Accordingly, she remains unable to establish a retaliation claim.

### 3. The Unincorporated Bucky Body Center And Dr. Bucky Are Not Persons Or Entities That Can Be Held Liable Under The Philadelphia Fair Practices Ordinance

For the reasons set forth above, Plaintiff was not an employee of the Defendant company and the company cannot be held liable under Title VII. Equally dispositive of Plaintiff's claims, the Third Circuit Court of Appeal's disposition on individual liability under Title VII is clear that Congress did not intend to enact individual liability with this statute. *See Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 184 (3d Cir.1997) (citing *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061 (3d Cir.1996)); *Dici v. Commonwealth of Pennsylvania,* 91 F.3d 542, 552 (3d Cir. 1996). In addition, this court has affirmed that the "relief granted under Title VII is against the employer, not individual employees whose actions constituted a violation of the Act." *Goodwin v. Seven Up Bottling Co. of Philadelphia,* 1996 W.L. 601683, *3 (E.D. Pa. 1996). The *Goodwin* court relied on the *Dici* Court cited above, when making its determination that the plaintiff as a matter of law failed to state a title VII claim, thereby dismissing the individual defendants. *Id.*

Recognizing that Dr. Bucky cannot be held directly liable under Title VII or the Philadelphia Ordinance, Plaintiff amended her claims in the First Amended Complaint, Plaintiff to include violations of the Philadelphia Ordinance on grounds that Dr. Bucky aided and abetted the unlawful conduct affected by the Company. While the Philadelphia Ordinance imposes individual liability on persons who aid, abet, insight, compel or coerce, or directly or indirectly commit unlawful discrimination or retaliation, Plaintiff cannot establish this claim. Specifically, because Plaintiff cannot establish a claim against the Company under Title VII, there is no

unlawful activity that Dr. Bucky could have "aided or abetted." *See Williams v. Aramark Campus LLC,* Civ. A. No.18-5374, 2020 WL 1182564, *10 (E.D. Pa. March 12, 2020) ( "for liability to be imposed on an aiding and abetting theory... there must be a cognizable predicate offense, i.e., a violation by the employer of [a]... primary antidiscrimination provision").

Accordingly, dismissal is proper on Plaintiffs PFPO claim alleging individual liability against Dr. Bucky as an aider and abettor.

> **B. The Pennsylvania Common Law Claims Set Forth In Count VI (Assault), Count VII (False Imprisonment), Count VIII (Intentional Infliction Of Emotional Distress), and Count XII (Negligence) Are Governed By Pennsylvania's Two-Year Statute Of Limitations And Must Be Dismissed Because They Are <u>Untimely As Temporally Defined By Plaintiff's Own Allegations</u>**

In their original Motion to Dismiss Plaintiff's First Amended Complaint, the following applicable actions and proceedings must be commenced within two years pursuant to 42 Pa. C.S.A. § 5524: an action for assault, battery, or false imprisonment; any action to recover damages for injuries to the person caused by the wrongful act; and any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct.

A statement that a claim is barred by an applicable statute of limitations is normally an *affirmative defense,* and plaintiffs need not anticipate and attempt to plead around all potential defenses. Fed. R. Civ. P. 8(c)). However, when the allegations of a complaint itself reveal that the case is barred by the statute of limitations – and no factual development is otherwise needed – then dismissal can be appropriate. *See Jay E. Hayden Found. V. First Neighbor Bank, N.A.,* 610 F.3d 382, 383 (7th Cir. 2010) (explaining that "if it is plain from the complaint that the statute of limitations defense is indeed a bar to the suit dismissal is proper without further pleading").

As recited in the Defendants' original briefing on this subject, Plaintiff has made the following claims under Pennsylvania common law that are governed by a two-year statute of limitations: Count VI (Assault and Battery), Count VII (False Imprisonment), Count VIII (Intentional Infliction of Emotional Distress), Count IX (Negligent Infliction of Emotional Distress) and Count XII (Negligence). The underlying acts of assault and battery are alleged to have taken place (1) during the Corporation's trip to Miami from April 29, 2021 through May 2, 2021 and (2) at a Philadelphia restaurant in June 2021. The false imprisonment is alleged to have occurred during a chance meeting at the Philadelphia restaurant in June 2021 and at another restaurant, the Barclay Prime steakhouse, across the street from the Corporation's offices on an undefined date but while Plaintiff was still employed, *i.e.* before September 21, 2021. The intentional infliction and negligent infliction of emotional distress were alleged to be the direct results of events occurring during Plaintiff's tenure with the Company, and the claim of negligence in Count XII is alleged to arise from an undefined duty of care that was allegedly owed to Plaintiff by all Defendants during her employment, which ended on September 21, 2021. Because these incidents are all alleged to have occurred by the end of Plaintiff's employment on September 21, 2023, and Plaintiff's Complaint was not filed until more than two years later (on October 19, 2023), Pennsylvania's two-year statute of limitation bars any recovery by Plaintiff for these common law torts actions.

Most importantly, in her responding memorandum, plaintiff did not respond at all to the arguments raised in Defendants' Motion to Dismiss regarding the dismissal of these claims as untimely, and that failure to respond constitutes an admission of the validity of those arguments made by the Defendants. *See Campbell v. Jefferson Univ. Physicians*, 22 F. Supp.2d 478, 487 (E.D. Pa. 2014) ("where a non-moving party fails to address the substance of any challenge to

9

particular claims, that failure constitutes an abandonment of those causes of action and essentially acts as a waiver of those issues"); *Levy-Tatum v. Navient Solutions, Inc.*, 183 F.Supp3d 701,712 (E.D. Pa. 2016) (plaintiff's response in opposition to motion to dismiss addressing sum , but not all of defendant's arguments is an abandonment of the claims and are waived); *Market v. PNC Fin. Services Grp, Inc.*, 828 F. Supp.2d 765, 773 (E.D. Pa. 2011) ("where an issue of fact or law is raised in an opening brief but is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant in regard to the uncontested issue").

## C. The State and Federal Sex Trafficking Allegations In Counts X And XI Do Not Have Their Own Statutes Of Limitation, Are Governed By Analogous State Tort Claim Statutes, And Thus, Are Time Barred Like Plaintiff's Common Law Claims

In Counts X and XI of her Complaint, Plaintiff alleges that by inviting Plaintiff together with several other workers to a Company trip to Florida, Dr. Bucky violated the terms of a state criminal statute that makes it a felony if an individual subjects another to "involuntary servitude" but provides no private right to a civil cause of action. That statute states as follows:

### § 3012. Involuntary servitude

(a) Offense defined.—A person commits a felony of the first degree if the person knowingly, through any of the means described in subsection (b), subjects an individual to labor servitude or sexual servitude, except where the conduct is permissible under Federal or State law other than this chapter.
(b)     Means of subjecting an individual to involuntary servitude.—A person may subject an individual to involuntary servitude through any of the following means:
    (1)     Causing or threatening to cause serious harm to any individual.
    (2)     Physically restraining or threatening to physically restrain another individual.
    (3)     Kidnapping or attempting to kidnap any individual.
    (4)     Abusing or threatening to abuse the legal process.
    (5)     Taking or retaining the individual's personal property or real property as a means of coercion.

      (6)  Engaging in unlawful conduct with respect to documents, as defined in section 3014 (relating to unlawful conduct regarding documents).

**18 Pa.C.S.A. § 3012**

  As discussed in Defendant's Memorandum to their Motion to Dismiss the First Amended Complaint, the alleged actions of Dr. Bucky simply do not fit any of the mandated terms of this criminal statute. However, even if the statute was civilly actionable, liability under it would be barred by the analogous statute for common law tort claims for such actions of two years since the Complaint specifically sets forth that the Company trip to Miami during which the improper involuntary servitude actions were alleged to have been affected against Plaintiff, took place from April 29-May 2, 2021 (well outside of the controlling two year statute of limitations). Moreover, the Complaint quizzically asserts that damages should be allocated in accordance with the provisions of 18 Pa.C.S.A. § 5747, which only provides for a private right of action for victims whose electronic, wire, or oral communication are intercepted.

  The federal sex trafficking claimed by Plaintiff in Count XI has even less application. The two statutes relied upon deal only with the sex trafficking of children (18 U.S.C.A. § 1591 (Sex Ttrafficking of Children or by Force, Fraud, or Coercion) or the setting of a private cause of action for engaging in the same (18 U.S.C.A. § 1595). In any case, the alleged actions that support the averments of federally prohibited sex trafficking are also based upon action in the Company trip to Miami for a trade conference from April 29, 2021 through May 2, 2021, once again well beyond a borrowed two-year statute of limitations relating to similar torts.

  Finally, since Plaintiff also did not respond to the arguments made by Defendants for dismissal in her responding memorandum, that failure constitutes an abandonment of both the federal and state sex trafficking causes of action, and essentially acts as a waiver of those issues.

*See Levy-Tatum v. Navient Solutions, Inc.*, supra 183 F.Supp3d at 712 and the other cases re: abandonment cite above in Section D.

    **D. Plaintiff Has Not Satisfied The Need To Proceed Pseudonymously**

As stated in Defendants' opening Memorandum and referenced in Plaintiff's responsive brief, Plaintiff allegedly has filed her Complaint using the pseudonym "Jane Doe" solely to avoid the public disclosure that she was the subject of sexual harassment against her will by Dr. Bucky who expressed warm feelings for her in written letters. While Defendants are well aware of Plaintiffs real name having engaged in EEOC proceedings and a mediation process under the direction of a former federal Magistrate Judge Rueter, Plaintiff did not seak leave of Court to proceed anonymously. By proceeding under the pseudonym "Jane Doe," Plaintiff is hiding behind a mask of anonymity, free to make allegations against the Defendant without being held accountable for her statements under her real name. Defendant is prejudiced by Plaintiff's use of a pseudonym because, as drafted, any person reviewing the allegations in this case will only be able to review Plaintiffs allegations of sexual harassment, without the context of the true identity of the individual making the allegations. Accordingly, it is respectfully urged that the Court find that the allegations and the arguments for proceeding using a pseudonym have not been adequately stated in the First Amended Complaint or in the Plaintiff's Response to the Defendants' Motion to Dismiss the First Amended Complaint and Plaintiff must be ordered prosecute this action in her real name.

The Third Circuit has held that a plaintiff's use of a pseudonym runs afoul of the public's right of access to judicial proceedings. "The people have a right to know who is using their courts. And defendants have a right to confront their accusers." *Doe v. Meglass,* 654 F. 3d 404, 408 (3d Cir. 2011 )(plaintiff, who was accused by defendants of being a pedophile, was required

to disclose his real name) (quoting *Doe v. Blue Cross & Blue Shield United,* 112 F.3d 869, 872 (7th Cir. 1997).

However, in her responding brief, Plaintiff only points to the alleged gravity of the actions against her by Dr. Bucky and simply does not state with the necessary particularity why her unsanctioned attempt to proceed pseudonymously fits with the definition of "extraordinary circumstance" that mandates protection from having to reveal her full name. Moreover, Plaintiff fails to meet all, or even any, of the known factors established in this Circuit to permit whether to allow a party to proceed anonymously.[2] *Doe v. Meglass*, 654 F.3d 404, 409 (3d Cir. 2011).

A plaintiff must show both a fear of severe harm and that such a fear is reasonable. Plaintiff here has not, and cannot, demonstrate that any harm would come to her if she were required to disclose her identity. Plaintiffs unexplained allegation that she has used "a pseudonym to avoid public disclosure of the sexual harassment she suffered and the psychiatric treatment she received does not create a legitimate interest to allow her to proceed anonymously. The findings in *Meglass* make clear that such fears *(i.e.,* fear of embarrassment and damage to personal and professional reputation) typically are insufficient to permit litigation under a pseudonym. *Meglass,* 654 F.3d at 408

---

[2] (1) The extent to which the identity of the litigant has been kept confidential; (2) The bases upon which disclosure is feared or sought to be avoided and the substantiality of these bases; (3) The magnitude of public interest in maintaining confidentiality; (4) Whether there is an atypically weak public interest in knowing the litigant's identity; (5) The undesirability of an outcome adverse to the pseudonymous party and attributable to her refusal to pursue the case at the price of being publicly identified; (6) Whether the party seeking anonymity has illegitimate ulterior motives; (7) The universal level of public interest in access to the identities of litigants; (8) Whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigants' identities, beyond the public's interest which is normally obtained; and (9) Whether the opposition to use of a pseudonym by counsel, the public, or the press is illegitimately motivated.

The additional nine (9) paragraphs of conclusory statements of law which Plaintiff has inserted in the First Amended Complaint simply do not save Plaintiff's right to proceed anonymously and the *Meglass* factors weigh heavily in favor of having Plaintiff proceed using her real name. Considering the requirements of Federal Rule of Civil Procedure 10(a), Defendant respectfully requests that Plaintiff be required to identify herself using her real name in the instant action. *See Doe v. City of Chicago,* 360 F.3d 667, 669 (7th Cir. 2004) (explaining the district court erred in permitting the plaintiff to proceed under pseudonym where the plaintiff alleged sexual harassment, and was not a "minor, a rape or torture victim, a closeted homosexual, or a likely target of retaliation by people who would learn her identity only from a judicial opinion or other court filing."); *Rose v. Beaumont Indep. Sch. Dist.,* 240 F.R.D. 264, 267 (E.D. Tex. 2007) (requiring plaintiff alleging explicit sexual harassment and assault as a minor to disclose her true identity in her lawsuit seeking compensatory and punitive damages and collecting cases where other courts denied requests for anonymity by plaintiffs alleging sexual assault).

Moreover in the First Amended Complaint at paragraphs 3-11, Plaintiff only recites the law governing the issue and makes no substantive allegations that could sustain the effort. Accordingly, Plaintiff herein should be required to litigate this matter using her real name.

### E. The Plaintiff's Complaint Does Not Present Sustainable Legal Issues, And Therefore, Must Be Dismissed On Its Merits After Review By The Court On The Basis Of Flagrant And Unexplained Violations Of The Rules And A Court Order

Although it is clear that Plaintiff's First Amended Complaint must be dismissed on its general merits, Defendants again respectfully suggest that Plaintiff's original Complaint should be dismissed on its merits as discussed in Defendants' Motion Memorandum and as fully set forth in Defendants' Second Motion to Dismiss and their Response to Plaintiff's Motion to

Dismiss that Motion based upon the Court's review utilizing the mandated factors set forth in *Poulis v. State Farm Fire & Casualty Co.,* 747 F.2d 863 (3d Cir. 1984).

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully suggest that Plaintiff's claims have no basis in fact or law, and the First Amended Complaint must be dismissed in its entirety with prejudice. Additionally, even if any part of Plaintiff's First Amended Complaint is not dismissed, Plaintiff should not be permitted to pursue this matter pseudonymously.

Respectfully submitted,

/s/ *Alan B. Epstein*

Alan B. Epstein, Esquire
Pa. Atty. I.D. No. 02346
SPECTOR GADON & ROSEN, P.C.
1635 Market Street, Seventh Floor
Philadelphia, PA 19103
(215) 241-/8817
Attorney for Defendants
*Defendants Louis P. Bucky, P.C., Louis P. Bucky, (Individually) and Bucky Body Center, individually and collectively*

Date: December 28, 2023

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I, Alan B. Epstein, Esquire, attorney for Defendants, do hereby certify that true and correct copies of the foregoing Response to Plaintiff's Motion to Strike and the proposed order were electronically filed with the Court and served by e-mail transmission through the Court's ECF system on this 28th day of December, 2023 to the following counsel and interested parties of record:

Seth D. Carson, Esquire
Derek Smith Law Group, PLLC
1835 Market Street, Suite 2950
Philadelphia, PA19103
(215) 391-4790
seth@dereksmithlaw.com

/s/ *Alan B. Epstein*

Alan B. Epstein